JAMES F. MCKAY III, Judge.
 

 hThe appellants, Rhonda Serignet and Demetrius Bailey, appeal the December 19, 2007 decision of the Civil Service Commission of New Orleans upholding the decision of the appointing authority for the City of New Orleans, Department of Health, to terminate their employment. We find that the ruling was warranted and affirm the decision.
 

 FACTS AND PROCEDURAL HISTORY
 

 Rhonda Serignet and Demetrius Bailey were employed at the City of New Orleans Department of Health (“Department”), with permanent status as classified civil service employees. Rhonda Serignet was an Emergency Medical Technician Paramedic. She was first hired by the City on April 12, 1994, and her appointment to her current status was effective April 28,1998. Demetrius Bailey, was an Emergency Medical Technician Assistant. He was first hired by the City on March 3, 2003.
 

 The appellants were absent from duty for approximately five days, on or about June 7, 2006 thru June 12, 2006. On June 12, 2006, Mr. Bailey returned to 12work and submitted to the department the required return to work note from Westbank Primary Care Clinic (“Clinic”). The submitted note was allegedly signed by Dr. Tri Du and purported to be medical excuses for illnesses and absences from duty. The following day, June 13, 2006, Ms. Serignet returned to work and also submitted a return to work note from the Clinic and also signed by Dr. Tri Du.
 

 Upon receipt of these notes, Supervisor Daryl Richardson noticed the similarities in Ms. Serignet’s return to work note and the note that was submitted on June 12, 2006, by Demetrius Bailey. Mr. Richardson apprised Mr. Cliff Washington, an investigator for the Department, of his concerns questioning the validity of the notes. The return to work notes were both forwarded to the Department’s deputy director, Mark J. Reis.
 

 The Department asserts that the appellants were orally notified by Mr. Reis, on June 13, 2006, that they were to attend a
 
 *1022
 
 pre-termination hearing/meeting that afternoon at department headquarters, 300 Calliope Street, to address the validity of their medical excuses. At the conclusion of that meeting the appellants were told to return to department headquarters the next morning and to provide the department with original copies of the suspect notes. On the morning of June 14, 2006, after the appellants failed to timely report for the scheduled meeting, Mark Reis, Yolanda Wilson
 
 [1]
 
 , and Cliff Washington drove to the Clinic, in an attempt to validate, with the clinic staff, the suspect notes. When they arrived at the clinic |sthey learned that Ms. Serignet and Mr. Bailey were also at the clinic. Upon seeing the appellants, Mr. Reis testified that he informed the appellants to appear at 300 Calliope Street so that they could have the meeting.
 

 Clinic employees Tina and Briteny For-et, when questioned as to the validity of the notes, confirmed that the notes were not physicians’ excuses generated by their office. Mark Reis then spoke to Kim Faz-ende and Dr. Tri Du who are also clinic employees. Dr. Du noted that he had not seen the appellants on June 7, 2006, but had seen them that very day and had written them each a medical excuse note. Ms. Fazende advised that there were no clinic records to indicate that either of the appellants had been seen on June 7, 2006.
 

 The same day, June 14, 2006, after returning to department headquarters, Ms. Serignet and Mr. Bailey met with Mark Reis, Cliff Washington and Yolanda Wilson. They were once again informed that this was a pre-termination conference regarding the investigation concerning the validity of the physician’s notes. The appellants informed the panel that the original notes, from Dr. Du dated June 7, 2006, were lost. However, Ms. Serignet offered the panel the new note which she had procured from the clinic that day. At the conclusion of the hearing, both appellants were again advised to return to department headquarters within twenty-four hours with the original notes. Ms. Serig-net ultimately handed over the note dated June 14, 2006, but Mr. Bailey did not. During the course of the hearing on June, 14, 2006, Ms. Serignet admitted that the note that she had initially submitted was an altered photo copy of a note that had been previously submitted for another |4absence and that she had not gone to the clinic until that very day to get a medical excuse note from Dr. Du. Mr. Bailey admitted to the same. Both appellants were advised that they would be contacted in writing regarding the outcome of the pre-termination hearing. The panel recommended that their employment be terminated.
 

 On June 14, 2006, Dr. Juliette Saussy, Director of Emergency Medical Services concurred with the panel’s recommendation and sent the appellants separate post-hearing letters of termination. It was noted that the terminations were based upon cause; the lack of truthfulness. The termination letters noted that the terminations were not based on the appellants being legitimately sick but on issues of integrity and truthfulness. The appointing authority, through Dr. Juliette Saussy in her capacity as director of the department, issued final dispositions of the investigation, which was employment termination as to both appellants pursuant to Civil Service Rule 9.1.1. The appellants appealed this order of termination to the Civil Service Commission (“CSC”). The CSC upheld the appointing authority’s decision to terminate the appellants’ employment with the department. It is from this decision that the appellant have appealed to this Court.
 

 
 *1023
 
 STANDARD OF REVIEW
 

 A permanent, classified civil service employee may not be disciplined or terminated except for legal cause and in writing. La. Const. art. X, Sec. 8;
 
 Saacks v. City of New Orleans,
 
 95-2074 (La.App. 4 Cir. 11/27/96), 687 So.2d 432. The employee may appeal the disciplinary action to the CSC, and the employer, or the appointing authority, has the burden of proof at the hearing. Specifically, the appointing authority has the burden of proving by a preponderance of the evidence that the complained-of conduct occurred and that it has impaired the efficiency of the public service of the department.
 
 Saacks v. City of New Orleans,
 
 95-2074, pp. 48-49 (La.App. 4 Cir. 11/27/96), 687 So.2d 432, 456;
 
 Cittadino v. Dept. of Police,
 
 558 So.2d 1311, 1315 (La.App. 4th Cir.1990). Once the CSC has rendered a decision regarding the employee’s appeal of the disciplinary action, we are bound to uphold the decision of the CSC unless it is “arbitrary, capricious, or characterized by an abuse of discretion.”
 
 Gant v. Dept. of Police,
 
 99-1351, p. 4 (La.App. 4 Cir. 1/5/00), 750 So.2d 382, 384, citing,
 
 Walters v. Dept. of Police of City of New Orleans,
 
 454 So.2d 106, 114 (La.1984);
 
 Newman v. Dept. of Fire,
 
 425 So.2d 753 (La.1983).
 

 “Cause” for the dismissal of a person who has gained permanent status in the classified civil service has been interpreted to include conduct prejudicial to the public service in which the employee in question is engaged or detrimental to its efficient operation.
 
 Walters v. Department of Police of City of New Orleans,
 
 454 So.2d. at 113. The Commission has a duty to decide independently from the facts presented whether the appointing authority has good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed was commensurate with the dereliction.
 
 Id,
 

 The Commission’s decision is subject to review on any question of law or fact upon appeal to the appropriate court of appeal. La. Const, art. X, § 12(B). | (¡Accordingly, the reviewing court should apply the clearly wrong or manifest error rule prescribed generally for appellate review in deciding whether to affirm the commission’s factual findings.
 
 Id.
 
 In reviewing the commission’s findings of fact, the court should not reverse or modify such a finding unless it is clearly wrong or manifestly erroneous. In judging the commission’s exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the court should not modify the commission’s order unless it is arbitrary, capricious or characterized by an abuse of discretion.
 
 Id.
 
 at 114; See also
 
 Evans v. DeRidder Municipal Fire and Police Civil Service Board,
 
 2001-2466 (La.4/3/02), 815 So.2d 61;
 
 Delpit v. New Orleans Dept. of Utilities,
 
 2002-2008 (La.App. 4 Cir. 2/19/03), 841 So.2d 30.
 

 DISCUSSION
 

 The appellants argue that the CSC ruling was manifestly erroneous in upholding the appointing authority’s decision to terminate their employment and that this ruling was arbitrary and capricious.
 

 Civil Service Commission Hearing
 

 On August 31, 2006, the CSC held a hearing, pursuant to Article X, Section 12 of the Constitution of the State of Louisiana, on the appellants’ appeal. The appellants were present and represented by counsel at the hearing.
 

 The appellants’ arguments are primarily based on three allegations.
 

 First, the appellants argue that their absences were based on fatigue and that this condition caused them to display bad
 
 *1024
 
 judgment. The appellants had in fact 17worked virtually continuously since Hurricane Katrina to the date of the infractions as the department was understaffed and overworked. The CSC dismissed this argument finding that the issue was not the appellants’ reasons for their absences but on the fact that the appellants deliberately falsified sick slips to mislead their supervisors. Both of the appellants admitted that the original slips (or copies of original notes) were altered. This deliberate falsification of sick slips showed a lack of truthfulness and reliability which the CSC, agreeing with the appointing authority, concluded justified their termination. We agree with the ruling of the CSC and find no merit to this argument.
 

 Secondly, the appellants maintained that the department did not give them proper notice concerning the pre-termination hearing pursuant to
 
 Cleveland, Bd. of Education v. Loudermill,
 
 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985), because a formal written notice of the pre-termination hearing held on June 14, 2006 was required. In
 
 Louder-■mill,
 
 the United States Supreme Court stated:
 

 An essential principle of due process is that a deprivation of life, liberty, or property “be preceded by notice and opportunity for hearing appropriate to the nature of the case.”
 
 Mullane v. Central Hanover Bank & Trust Co.,
 
 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). We have described “the root requirement” of the Due Process Clause as being “that an individual be given an opportunity
 
 for
 
 a hearing
 
 before he is
 
 deprived of any significant property interest.”
 
 Boddie v. Connecticut,
 
 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis in original); see
 
 Bell v. Burson,
 
 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971). This principle requires “some kind of a hearing” prior to the discharge of an employee who has a constitutionally protected property interest in his employment.
 
 Perry v. Sindermann,
 
 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570. As we pointed out last Term, this rule has been settled for some time now.
 
 Davis v. Scherer,
 
 468 U.S. 183, 192, n. 10, 104 S.Ct. 3012, 3018, n. 10, 82 L.Ed.2d 139 (1984);
 
 Id.,
 
 at 200-203, 104 S.Ct. [at] 3022-3024 |K(BRENNAN, J., concurring in part and dissenting in paid). Even decisions finding no constitutional violation in termination procedures have relied on the existence of some pretermination opportunity to respond. For example, in
 
 Arnett[ v. Kennedy,
 
 416 U.S. 134, 168-169, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) ] six Justices found constitutional minima satisfied where the employee had access to the material upon which the charge was based and could respond orally and in writing and present rebuttal affidavits. See also
 
 Barry v. Barchi,
 
 443 U.S. 55, 65, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979)(no due process violation where horse trainer whose license was suspended “was given more than one opportunity to present his side of the story”). [Emphasis added.]
 

 The record indicates that the appellants were confronted by their supervisors on June 13, 2006, and notified that their sick slips were suspect and were being questioned as to their validity. The appellants were told to appear the next day for a hearing. The hearing was to give the appellants an opportunity to produce the signed original sick slips and to present any justification for their falsification. They were clearly orally informed of the hearing and the purpose of the hearing. They were both aware that employment termination was being considered. The appellants were given the opportunity to
 
 *1025
 
 respond to the accusations and to present their version of the facts to the panel.
 

 The CSC found that neither
 
 Lov.de,r-ndll
 
 nor CSC rules require written notice of a pre-termination hearing. Hence,
 
 Loudennill
 
 is satisfied as long as the employee knows through oral or written notice that he/she will have an opportunity at a hearing to respond to the charge being asserted. The hearing doesn’t have to be definitive. It is an “initial check against mistaken decision.”
 
 Id.,
 
 470 U.S. 532, 105 S.Ct. at 1495. The CSC found that “The evidence in the record shows without question that appellants were told to appear for a hearing on June 14, 2006 and to bring an original doctor’s note verifying their alleged sickness.” The appellants’ responses confirmed that lathe medical excuse notes, submitted to the department upon the appellants’ return to work were falsified. We find that it was established through testimony and other evidence that the due process requirements, as set forth in
 
 Loudermill,
 
 namely notice of transgressions, a time set for the hearings, and an opportunity to present their side of the story, were all present in the case
 
 sn,b jvdiee.
 
 There is no merit to this assignment of error.
 

 Thirdly, the appellants argued that they were not properly terminated because the appointing authority was the department which did not issue the termination letter, as Dr. Juliette Saussy signed the termination letter dated June 14, 2006, on behalf of EMS and the Department of Homeland Security.
 

 The CSC concluded that CSC Rule 11-IX § 1.1, specifies that classified employees are terminated by their appointing authority, which in this case was the Department of Health. The CSC went on to note that:
 

 However, the record reflects that pursuant to the authority in the Louisiana Homeland Security Act, La. R.S. 29:727, Mayor Ray Nagin transferred “first responders”, such as EMS, to the control of the Department of Homeland Security during the emergency created by Hurricane Katrina. The testimony of the Director of Homeland Security, Col. Terry Ebbert, indicates that during the Katrina declared ‘emergency’ all of the operational functions of EMS including the termination of EMS employees were under the ultimate control of the Homeland Security Agency, which in turn delegated the authority to terminate employees to EMS. Thus, we find that EMS, acting through Dr. Juliette Saus-sy, had the delegated authority to terminate Appellants.
 

 Colonel Terry Ebbert also testified that he reviewed the termination letters and concurred with Dr. Saussy. Based on the decision of the CSC and the record before this Court, we agree with the CSC decision and find that Dr. Juliette had the | inauthority to formally sign the June 14, 2006 notice of employment termination. The appellants were terminated under proper authority and in conformance with their constitutional due process rights. We find no merit to this assignment of error.
 

 CONCLUSION
 

 The CSC rendered its decision on December 19, 2007, and upheld the employment termination of both appellants. Its decision was based on factual findings that the appellants did indeed falsify sick slips to mislead their supervisors as to the reasons for their absences from work in violation Civil Service Rules.
 

 In the review of the record before this Court we must afford great deference to the CSC’s ruling supporting the decision of the appointing authority to terminate the appellants. Therefore, we find that the decision of the CSC was based on suffi-
 
 *1026
 
 eient legal cause and was neither arbitrary nor capricious, nor an abuse of discretion. The decision of the CSC is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Yolanda Wilson is the Human Resource Fi- nance Director for the department.