ROLAND L. BELSOME, Judge.
 

 ^Officer Nick Pearson, an employee of the New Orleans Police Department,
 
 [1]
 
 was charged with violating the NOPD’s internal rules by showing a single photographic lineup
 
 [2]
 
 to victims of an armed robbery. The NOPD (“Appointing Authority”) ultimately terminated Officer Pearson for the violations; he appealed this decision to the Civil Service Commission. The Commission denied Officer Pearson’s appeal. Because we do not find the Commission’s determinations to be arbitrary or capricious, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 The Appointing Authority alleged that on July 24, 2007, Appellant Officer Pearson revealed a single photographic lineup to two victims of an armed robbery. Appellant subsequently prepared an incident report indicating that another officer, Officer Rydell Diggs, actually revealed the single photograph to the victims. Appellant’s incident report also indicated that the two victims were sober; however, Appellant later insisted that his incident report contained typographical errors and should
 
 *266
 
 have read that the victims were intoxicated.
 

 laAfter an investigation, Appellant was charged with violating NOPD Departmental Rules and/or Procedures regarding Truthfulness, Professionalism, Instructions From an Authoritative Source,
 
 [3]
 
 and False or Inaccurate Reports. By letter dated October 10, 2007, the Appointing Authority terminated Appellant pursuant to the violations, noting that this was his second Moral Conduct rule violation, third Performance of Duty violation, and second Official Information rule violation within a twenty-four month period. Appellant appealed this disciplinary action, and hearings were conducted in conjunction with this appeal on May 22, 2008, May 28, 2008, and June 12, 2008.
 

 Lauren Hotard and Merrel Irby, the victims of the armed robbery, testified at the hearings. Both Ms. Hotard and Ms. Irby recalled that an African-American police officer briefly took some information from them and then left in search of the perpetrator. Both witnesses identified Appellant, a Caucasian male, as the officer who stayed behind to obtain further details. Both witnesses testified that during this time, no other officers were present, and Appellant showed them a single photograph,
 
 [4]
 
 asking whether the individual in the picture resembled the perpetrator.
 
 [5]
 
 Both witnesses also recalled Appellant mentioning Eddie Jordan’s name and that the individual in the photograph had been let off before. When questioned, Ms. Ho-tard testified that neither of them had been drinking that evening. Although Ms. Hotard and Ms. Irby admitted to being extremely upset by the robbery, both witnesses answered in the affirmative when asked whether they were certain that it was Appellant who showed them the photograph. Neither recalled Officer Diggs showing them a photograph.
 

 ^Detective Jimmy Turner testified he responded to the aimed robbery call as part of a follow-up unit and interviewed the victims. While questioning one of the victims regarding a description of the perpetrator, he learned from the victim that Appellant had previously shown her a photograph of the armed robbery suspect. Detective Turner testified that when he spoke to Appellant regarding whether he had shown one of the victims a single photograph of an individual who resembled the perpetrator, Appellant informed Detective Turner that the picture had been disseminated at the station and indicated to Detective Turner that he had shown the picture to the victim.
 
 [6]
 

 Sergeant Joseph Lorenzo of the NOPD Public Integrity Bureau conducted interviews of the two victims after a news report alleged that a police officer had shown a photograph of a wanted poster to two victims of a crime. Sgt. Lorenzo interviewed both Ms. Hotard and Ms. Irby, and testified that the statements of the two victims were basically the same: they gave a brief description of the perpetrator to Officer Diggs, who then left; sometime
 
 *267
 
 thereafter, Appellant showed them a wanted poster and asked if it resembled the perpetrator, and that when Detective Turner arrived, the victims advised him that they had been shown a wanted poster by Appellant. Detective Turner, in his interview with Sgt. Lorenzo, recalled that after he arrived on the scene to investigate, one of the victims advised him that Appellant had already shown her a picture of the perpetrator. Sgt. Lorenzo also testified regarding his interview with Officer Rydell Diggs, who admitted to inadvertently displaying the wanted poster to the victims while flipping | ¡¡through papers on a clipboard; Sgt. Lorenzo confirmed that at no time in his investigation, however, did either victim state that Officer Diggs showed them the wanted poster.
 
 [7]
 
 Sgt. Lorenzo also testified regarding his interview with Appellant, who insisted that it was Officer Diggs, not Appellant, who showed the wanted poster to the victims, and that Appellant noted same in his incident report.
 

 Asst. Supt. Anthony Canatella conducted the pre-termination hearing in this matter and presented a recommendation to the Superintendent of Police. Chief Canatella testified that, upon review of the entire investigative report and the victims’ statements, he found the statements credible, noting that the victims had no reason to lie about the actions of an officer who was working to solve their case. Chief Cana-tella also referenced Officer Diggs’ statement admitting to inadvertently showing a wanted bulletin to one of the victims, and noted that if Appellant had similarly admitted the violations, his recommendation would have been a suspension and more training rather than termination.
 

 Appellant testified on his own behalf. He related that after separating the victims, he began to interview Ms. Hotard first, and when Officer Diggs arrived shortly thereafter, he spoke with Ms. Irby for several minutes. Appellant further testified that Officer Diggs had his clipboard with him and a wanted bulletin, and was asking Ms. Irby if the individual on the bulletin was the perpetrator of the armed robbery. With respect to the alleged impairment of the victims, Appellant insisted that his report contained a typographical error and should have stated the victims had been drinking. Although conceding that he and Officer Diggs do not resemble one another, Appellant argued that given the traumatic experience of the | (¡armed robbery, the intoxication of the victims, and the fact that he spent a long period of time with them, the victims were simply mistaken over which officer had shown them the wanted bulletin.
 

 At the conclusion of the hearings, the Hearing Examiner prepared a report dated September 29, 2008, which was submitted to the Commission along with the testimony and evidence. The Hearing Examiner found that the Appointing Authority established by a preponderance of the evidence that it terminated Appellant for cause and did not abuse its discretion in so doing. In support of this conclusion, the Hearing Examiner determined that the testimony of the independent witnesses was credible and was also supported by Officer Turner’s testimony, who received the incriminating information in close proximity to the alleged incident. The Commission denied the appeal on April 7, 2009. This appeal followed.
 

 STANDARD OF REVIEW
 

 An employee who has gained permanent status in the classified city civil
 
 *268
 
 service cannot be subjected to disciplinary action by his employer except for cause expressed in writing. La. Const, art. X, § 8(A);
 
 Walters v. Department of Police,
 
 454 So.2d 106 (La.1984). The employee may appeal from such disciplinary action to the Civil Service Commission, and the burden of proof on appeal rests with the appointing authority.
 
 Id.
 
 The appointing authority has the burden of proving, by a preponderance of the evidence, that the complained of activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority.
 
 Cure v. Dept. of Police,
 
 2007-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094,
 
 citing Marziale v. Dept. of Police,
 
 2006-0459, p. 10 (La.App. 4 Cir. 11/8/06), 944 So.2d 760, 767.
 

 |7The decision of the Commission is subject to review on any question of law or fact upon appeal to this Court, and this Court may only review findings of fact using the manifestly erroneous/clearly wrong standard of review. La. Const, art. X, § 12;
 
 Cure,
 
 2007-0166, p. 2, 964 So.2d at 1094. In determining whether the disciplinary action was based on good cause and whether the punishment is commensurate with the infraction, this Court should not modify the Commission’s order unless it was arbitrary, capricious, or characterized by an abuse of discretion.
 
 Id.
 

 DISCUSSION
 

 Appellant assigns two errors for our review: first, he argues that his conduct did not constitute a violation of the internal rules and that there was no legal cause for his termination; second, he argues that the discipline imposed was not commensurate with the violation.
 

 Assignment of Error # 1
 

 Appellant first argues that his conduct did not constitute a violation of the internal rules and that no legal cause existed to support the discipline imposed by the Appointing Authority. Appellant submits that Officer Diggs is the only officer who revealed a wanted bulletin, emphasizing Officer Diggs’ admission to inadvertently displaying the wanted bulletin while flipping through pages on his clipboard. Appellant further argue that the victims’ intoxication and anxiety from the armed robbery resulted in the identification of him, rather than Officer Diggs, as the person who showed them the wanted poster.
 

 This Court has recognized that “[e]ven when there is conflicting testimony, credibility evaluations cannot be disturbed on review.”
 
 Williams v. Sewerage and Water Bd.,
 
 2004-0025, p. 7 (La.App. 4 Cir. 5/19/04), 876 So.2d 117, 121,
 
 citing Moore v. New Orleans Police Dept.,
 
 2001-0174, p. 8 (La.App. 4 Cir. 3/7/02), 813 So.2d 507, 511. Unless clearly contrary to the evidence, credibility determinations are within the discretion of the trier of fact and will not be disturbed by the reviewing court.
 
 State v. Marshall,
 
 2004-3139, p. 9 (La.11/29/06), 943 So.2d 362, 369,
 
 citing State v. Vessell,
 
 450 So.2d 938, 943 (La.1984). Additionally, La. R.S. 49:964(G)(6) provides that in reviewing an agency’s decision, “due regard
 
 shall
 
 be given to the agency’s determination of credibility issues” by appellate courts, (emphasis added). It is well-settled that a reviewing court should not modify the Commission’s order unless it was arbitrary, capricious, or characterized by an abuse of discretion.
 
 Serignet v. Department of Health,
 
 2008-0469, p. 5 (La.App. 4 Cir. 5/20/09), 15 So.3d 1019, 1023;
 
 Cure,
 
 2007-1066, p. 2, 964 So.2d at 1094.
 

 We find that the evidence in this case supports the Commission’s finding that Appellant’s conduct violated the Appointing Authority’s internal rules regard
 
 *269
 
 ing Truthfulness, Instructions from an Authoritative Source relative to Identification of Suspects, False and Inaccurate Reports, and Professionalism. We agree with the Commission’s finding that Ms. Hotard and Ms. Irby’s testimony was not only credible but also corroborated by Detective Turner’s observations. While the victims admitted to being upset and traumatized by the armed robbery, both were absolutely certain that it was Appellant, and not Officer Diggs, who showed them the photograph. The Commission acknowledged Asst. Supt. Cannatella’s observation that the two victims, as independent witnesses, had no reason to be untruthful in identifying Appellant as the officer who showed them the photograph. Moreover, it was stipulated by counsel for Appellant that Appellant and Officer Diggs do not look anything alike. After reviewing the testimony and evidence in the record, we cannot say that the credibility determinations made by | 3the Commission are clearly contrary to the evidence under these particular facts and circumstances. Accordingly, we find that the Commission’s decision was based on legal cause and was neither arbitrary, capricious, nor an abuse of discretion under these particular facts and circumstances. Serig
 
 net,
 
 2008-0469, p. 5, 15 So.3d at 1023;
 
 Cure,
 
 2007-1066, p. 2, 964 So.2d at 1094.
 

 Assignment of Error # 2
 

 In his second and final assignment of error, Appellant argues that his punishment was not commensurate with the alleged infraction.
 

 In reviewing disciplinary action to determine whether such punishment was commensurate with the violation, this Court should not modify the Commission’s order unless it is arbitrary, capricious, or characterized by an abuse of discretion.
 
 Señg-net,
 
 2008-0469, p. 5, 15 So.3d at 1023;
 
 Cure,
 
 2007-1066, p. 2, 964 So.2d at 1094. A decision of the Commission is arbitrary and capricious if there is no rational basis for the action taken by the Commission.
 
 Cure,
 
 964 So.2d at 1095. For the reasons discussed herein with respect to the first Assignment of Error, we find that the Commission’s determinations were not lacking a rational basis, were not arbitrary or capricious, nor were they characterized by an abuse of discretion. This assignment of error lacks merit.
 

 CONCLUSION
 

 For the foregoing reasons, the decision of the Commission denying Appellant’s appeal is hereby affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Officer Pearson was a Police Officer I with permanent status at the time of the alleged violations.
 

 [2]
 

 . The single photographic lineup consisted of a “wanted” poster of an individual.
 

 [3]
 

 . This violation is with regard to Chapter 42.8, relative to Identification of Suspects— Lineups, Crime Scene and Mug Shots.
 

 [4]
 

 . Ms. Hotard testified that the photograph was on a clipboard; Ms. Irby did not recall Appellant having a clipboard.
 

 [5]
 

 . Ms. Irby recalled that the photograph had descriptive written information around it.
 

 [6]
 

 .When questioned, "Did [Appellant] confirm to you that he, in fact, showed her the picture?” Detective Turner testified: "Yes, not — he didn't say, yes, I showed her the picture; however, he indicated that he had showed [sic ] her the — that he had showed
 
 [sic
 
 ] the victim the picture.”
 

 [7]
 

 . Sgt. Lorenzo also interviewed Sgt. Philibert, Officer Diggs’ immediate supervisor, who stated that Officer Diggs contacted him and asked whether inadvertently showing the victims the wanted poster would constitute identification.