ROLAND L. BELSOME, Judge.
| Mason Lewis appeals his termination from the New Orleans Police Department. For the reasons that follow we reverse the decision of the appointing authority and reinstate Jason Lewis.
Officer Jason Lewis was assigned to the Police K-9 Division in 2004. In 2006, Officer Lewis was assigned to be the handler for Primo, a Belgian Malinois. As Primo’s handler, Officer Lewis cared for Primo twenty-four hours a day, seven days a week. After working. Primo out on May 27, 2009, Officer Lewis placed Primo in his K-9 unit, gave him water and turned on the unit’s cooling system. Then Officer Lewis went inside his home to shower and dress for his ÑOPD shift.
When Officer Lewis returned to the vehicle he immediately noticed that the seats in the vehicle had been torn to pieces. He opened the vehicle to reprimand Primo for destroying the seats and noticed he was lying in the back coughing. Believing that foam stuffing from the seats was obstructing his airway, Officer Lewis pulled Primo from the vehicle and attempted to clear his air passageway. He testified that the dog’s body temperature seemed elevated so he hosed him Rdown trying to cool him down. Next, he placed the dog in his personal vehicle and drove him to the closest veterinarian office.[1]
After being treated on an emergency basis at the Algiers Animal Clinic, Primo was transferred to Southeast Veterinary Specialists, where he was pronounced dead. Primo’s remains were sent to the *454 LSU School of Veterinary Medicine for an autopsy and report. The official cause of death for Primo was determined to be overheating.
Immediately following Primo’s death, Captain Clarence Hebert and Sergeant Ricky Blanchard inspected the K-9 vehicle.[2] The inspection of the vehicle was video-taped. When opening the door to the vehicle, they noticed and documented the damage to the front seats. Further documented was the vehicle’s air conditioner on and set to the maximum cool and maximum air positions.[3] Next the officers tested the back-up system to determine if it was working properly. Once the air conditioner was turned off and the interior temperature reached 87 degrees, an alarm sounded, the fan started, and the windows rolled down.
Shortly after Primo’s death, there was an investigation by the Public Integrity Bureau (“PIB”).[4] In addition to reviewing the vehicle and medical reports, PIB conducted several interviews including Officer Lewis’ co-workers, neighbors and three veterinarians. None of the interviews gave any indication that |,..Officer Lewis ever mishandled or neglected Primo. To the contrary, the doctors stated that Pri-mo’s heat stroke could have been brought on by his physical conduct Primo was known to be high strung and to suffer from separation anxiety when he was away from Officer Lewis.[5] The result of the PIB was that there was insufficient evidence to prove that Officer Lewis neglected any of his duties as they pertained to the handling and care of Primo.[6] PIB’s conclusion was that the disposition to the alleged violation be classified as “Rule 4: Performance of Duty; Paragraph 4a: Neglect of Duty; . Not Sustained”.
Later, the Metropolitan Crime Commission received an anonymous tip that they should “look into” Primo’s death. This was forwarded to the Orleans Parish District Attorney’s office. In December 2009, a Grand Jury reviewed the evidence of the case and failed to return an indictment or a “no true bill.” On April 22, 2010, the District Attorney filed a Bill of Information in Orleans Parish Criminal District Court against Officer Lewis. The Bill of Information charged Officer Lewis with Aggravated Cruelty to Animals, a felony. Officer Lewis was arrested.
Officer Lewis’ testimony before the hearing officer gave an account of the events that followed. The case was allotted to Judge Alarcon’s section. Officer Lewis stated that his attorneys considered Judge Alarcon to be an animal activist. At his bond hearing before Judge Alarcon, the Judge ordered a $100,000.00 bond. A $10,000.00 bond was suggested by the attorneys without objection by the State. *455 According to Officer Lewis’ undisputed testimony, Judge Alarcon altered the Ramount of the bond to $35,000.00 and said “[w]ell, I am going to put on the record that this is what I normally give my negligent homicide cases.” There was some discussion by his attorneys regarding filing a motion to recuse, but that was not done.
Just prior to trial, Officer Lewis stated that he met with his attorneys who reviewed his options with him. Due to all the media hype and special interest groups pushing the case,[7] his attorneys did not think he could get a fair jury trial. Officer Lewis had already experienced Judge Alarcon’s demeanor towards him and had a general understanding of his opinion of the crime. So when his attorneys urged him to plead to a misdemeanor he eventually succumbed to the reality of his situation. According to his testimony, he had no choice but to plead guilty to Misdemeanor Cruelty to Animals. Judge Alar-con accepted the plea, but only after redacting any reference to La.C.Cr.P. article 894.[8]
Following his plea in Criminal Court, he was terminated from his employment with the NOPD by the Superintendent of Police Roñal Serpas.[9] Officer Lewis appealed his termination to the Civil Service Commission. That hearing was had on February 9, 2011, and a ruling was issued on September 14, 2011. The Commission upheld the appointing authority’s decision to terminate Officer Lewis. That ruling is the subject of this appeal.
| Jt is well settled that when determining if the disciplinary action taken by the appointing authority was based on good cause and commensurate with the infraction, this court will not modify the order of the Commission unless the decision was arbitrary, capricious or characterized an abuse of discretion. Pearson v. Dept. of Police, 09-725, p.7 (La.App. 4 Cir. 11/12/09), 26 So.3d 264, 268 (citing Cure v. Dept of Police, 07-166, p.2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094). On appeal to the Commission, the appointing authority must prove, “by a preponderance of the evidence, that the complained of activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority.” Id. This Court’s review of the Commission’s findings of fact is governed by the manifestly erroneous/clearly wrong standard. Id.
On appeal Jason Lewis contends that the Commission erred in affirming his termination since the appointing authority did not prove by a preponderance of the evidence that Jason Lewis’ actions impaired the efficient operation of the public service. Alternatively, he argues that the penalty imposed by the appointing authority was excessive.
The hearing officer for the Commission heard the testimony of several witnesses, including investigating officers and experts. Glaringly absent from the hundreds of pages of testimony was any evidence that Jason Lewis was negligent in his duties as a handler and caregiver for Primo. All evidence indicates otherwise *456 and the Commission’s ruling acknowledged as much, stating “[t]his case would be 1 ^simple if in fact the Appellant mistreated, neglected, or was cruel towards the animal that he was assigned to care for and protect.”
During his testimony, Chief Serpas claimed that he found Officer Lewis had violated “moral conduct, adherence to the law.” He further testified that “[a]s an appointing authority, when you review cases like this you don’t do it by whim ... You take and consider all the issues....” Chief Serpas stated that in this case he concluded “that the effective and efficient service of the Police Department could not be guaranteed in Mr. Lewis’ continued employment.” He reasoned that the loss of Primo and the cost to replace him was a consideration and that he viewed it as impairing the efficiency of the operation. However, on cross-examination he admitted that although he knew of PIB’s investigation and report, it was not something he looked at. In direct contradiction to his statement that all the issues must be considered, Chief Serpas based the decision to terminate solely on Jason Lewis’ guilty plea. He ultimately determined that the guilty plea, on its face, warranted termination, even though the guidelines for disciplinary action spanned from two weeks to termination.
The Commission recognized that the appointing authority, for unknown reasons, ignored the underlying facts of this case when making the decision to terminate. It went so far as to state, “[i]f ever there was a case that would justify an exploration of the underlying facts, this would be such a case.” Nonetheless, the Commission went on to find that termination based solely on the guilty plea was not an abuse of discretion. We disagree.
|7The Commission was presented with ample evidence indicating that Primo’s death was not a result of any action or inaction by Jason Lewis. Included in that evidence was expert testimony that established Primo was high strung and had a history of working himself up when he was separated from his handler. The expert testimony explained that the condition of the interior of the vehicle was not representative of a dog suffering from heat stroke, but rather a dog that worked himself into a frenzy, which subsequently resulted in increased body temperature and heat stroke.
The appointing authority had the burden of proving, by a preponderance of the evidence, that the dereliction occurred and presented a real and substantial relationship to the efficient operation of the appointing authority. Pearson, supra. Based on the record before this court, the appointing authority failed to meet that burden. The only evidence put forth by the appointing authority was the guilty plea. We find it was arbitrary, capricious and an abuse of discretion for the appointing authority to ignore the results of the PIB investigation surrounding the death of Primo and the mitigating circumstances involved with Jason Lewis’ plea. We further find it arbitrary and capricious for the Commission to acknowledge the evidence in support of Jason Lewis’ appeal and then disregard it when making its determination.
For these reasons, we reverse the decision of the Civil Service Commission and order that Jason Lewis be reinstated. All pay and benefits are to be restored to Jason Lewis with interest.
REVERSED
TOBIAS, J., concurs in part, dissents in part, and assigns reasons.

. The testimony established that the Algiers Animal Clinic was approximately two minutes away from Officer Lewis’ home.

. K-9 vehicles are equipped with cooling systems that allow the air condition to run while the dog is in the vehicle. The system also has a heat sensor that activates a fan and rolls down the windows if the interior temperature of the vehicle reaches 87 degrees.

. The switches in the rear canine compartment were also in the cold mode.

. The investigation was conducted by Sergeant Jenerio Sanders of the Administrative Investigations Section of the Public Integrity Bureau.

. The record indicates that his treating veterinarian sedated him for exams and treatment because of his personality. Also discussed where incidents where he would work himself up inside the vehicle when left by Officer Lewis.

. Sergeant Sanders reduced the results of his investigation into a report dated June 24, 2009.

. Officer Lewis was aware that the Metropolitan Crime Commission, the Humane Society, and SPCA had all taken an interest in his case.

. La.C.Cr.P. article 894 provides for the possibility of having a misdemeanor conviction set aside and the prosecution dismissed.

. There was a disciplinary hearing on October 27, 2010, which resulted in his termination on that same day.