SANDRA CABRINA JENKINS, Judge.
11 Trenika Hqnore appeals the Civil Service Commission’s decision denying the appeal of her termination as. a Parking Control Officer with permanent status by the Department of Public Works (the “Department”), the Appointing Authority. Upon review of the record, we affirm the Commission’s finding that the Department established legal cause for taking disciplinary action. Under the circumstances of this case, however, termination is an excessive disciplinary action not commensurate with the eomplained-of infraction. Consequently, we find the Commission abused its discretion by upholding Honore’s termination.
FACTUAL AND PROCEDURAL BACKGROUND
On October-17, 2012, the Department sent notification to Honoré informing her she was being placed on emergency suspension for violating departmental policy and the Parking Division’s Code of Conduct when she refused to follow a directive from her supervisor, Carl Bridgewater,- on October 12, 2012. The notification stated that the incident on' October 12, 2012, “along with [her] documented poor work history,” is cause for “strong, disciplinary action;”[1] and the Department may impose additional discipline pending a further investigation. The | ¡¡emergency suspension for one hundred. twenty (120) calendar days was effective as of the date of the letter, October 17,2012. ,
On December 12, 2012, the Department notified Honoré of a pre-termination hearing to consider her dismissal for violations of Civil Service Rüle IX, Section 1.1 and the Parking Division’s Code of Conduct stemming from the October 12, 2012 incident. The Department conducted the pre-termination hearing on January 9, 2013, and by letter dated January 14, 2013, the Department notified Honoré of her termination. Honoré timely filed an appeal of her termination-with the Commission.
The Commission appointed a hearing examiner to receive testimony and the hearing was held on March 21, 2013 and May Í6, 2013. The hearing examiner received testimony from eight witnesses, including Honoré, regarding the incident on October 12, 2012 and the events preceding the Department’s termination of Honoré. The testimony pertinent to this appeal is as follows.
Danielle Johnson testified that on October 12, 2012 she was a Parking Control *1124 Officer assigned • to work the 3p.m. to 11p.m. shift with Honoré. During their shift, Johnson felt sick and called their supervisor, Bridgewater, on the dispatch radio to tell him she was sick and ask to go home. When Johnson called Bridgewater, he told her to return to the main office, to sign out and to give the keys to their department vehicle to Honoré for her to bring the vehicle back to the auto pound. Johnson testified that she understood that to mean Bridgewater would meet Honoré at the auto pound so they could work the balance of the shift together.
At this point, testimony regarding the October 12 incident diverges. Bridgewa-ter'testified that when he received the radio call from Johnson stating that she was sick, he approved her request to leave early; and he instructed Johnson to | spark the department truck in front of the office where he would pick up Honoré to-work the rest of the shift with her. Bridgewa-ter stated that the Department requires parking control officers to work in .groups of two during evening shifts for safety reasons. When Bridgewater arrived at the office he saw Johnson but. Honoré was not there with the truck. . Bridgewater tried to call Honoré twice on the dispatch radio, but she did not answer. He then successfully contacted Honoré on the “chirp” (a walkie-talkie function of certain cell phones). When he asked where she was, Honoré responded that she did not want to work with him. At that point, he told her to meet him at the auto pound.
Bridgewater testified that he-arrived at the auto pound and Honoré parked her department vehicle and got into the van with him. She told him again she did not want, to work with him and wanted to go home. Bridgewater testified that he began driving them to the office to fill out a statement on Honore’s refusal, to work. Honoré asked if he was bringing her to her car and he told her he was bringing her to the office first to fill out paperwork. Then while the van was stopped at a traffic light at the corner of Claiborne and Poy-dras, Honoré got out of the van and starting walking to where her personal vehiclé was parked. Bridgewater proceeded to drive to the office and waited outside for Honoré to arrive before going inside to write out his statement. Bridgewater’s statement, introduced at the hearing, is consistent with' his testimony regarding the incident. His statement noted Hon-ore’s failure to meet him at the office, failure, to communicate with him on the radio, and her refusal to work the rest of her shift with. him. His statement concluded with a recommendation that Hon-oré be suspended for her actions of that evening.
Bridgewater testified that Honoré never requested to go home sick that evening and he did not .know her reason for refusing to work with him. He also 1 ¿testified that Honoré did not report any injury to him, that he did not see Honoré injured in any way while exiting the van, and she did not appear injured when she arrived at the office. Bridgewater next saw Honoré at the meeting with department officials on October 16, 2012, at which time he learned of her claim that' she had been injured while getting out of his van.
By Honore’s account of events, she did not refuse to work the rest of her shift with Bridgewater and she followed the usual department protocols. She testified that after Johnson requested to leaye her shift early but prior to meeting Bridgewa-ter at the auto pound she contacted him on the “chirp” and told him she also was sick and wanted to go home. According to Honoré, Bridgewater only instructed her to meet him at the auto pound, which she did, and he brought her to her personal vehicle before going to the office to sign *1125 out, as was customary. Then, as she was exiting the van, Bridgewater told her to get back in and started to drive while she had one foot out of the van. Honoré claims that Bridgewater drove about 5 feet before stopping and allowing her to completely get out of the van, causing injury to her foot and ankle. She then got into her own vehicle and drove to the office to fill out a statement about the incident. In her written statement, Honoré reported.that Bridgewater “almost dragged me along-with him and it was done on purpose because he did not want to bring me to my vehicle.”
Honoré testified that she. asked Bridge-water to bring her to the hospital because her ankle was hurting; but he refused. After she completed her written statement at the office, she went to Tulane Medical Center to have her ankle checked, out. Honoré introduced a discharge summary and after care instructions from Tulane Medical Center, dated October 12, 2012, referencing an ankle sprain injury. When asked whether she reported her injury to any of her supervisors in |Hthe chain of command other than Bridgewater, Honoré testified that she reported it to her immediate supervisor, Bridgewater, when it occurred and then reported it again when she returned to work and met with department officials on October 16,2012.
Zepporiah Edmonds, the Parking Administrator for the Department, testified regarding the meeting on October 16, 2012 and the subsequent disciplinary action taken against Honoré. On October 16, 2012, Edmonds and Jérry Conner, the Parking Section Manager,' held a meeting with Honoré and Bridgewater !to take further statements from each of them, and from Danielle Johnson, regarding the incident reported on October 12, 2012. Edmonds testified that Honoré admitted to operating her personal vehicle while on duty, which violates departmental. policy; but Honoré denied refusing any directive from Bridgewater. Based on the statements of each individual involved and the investigation into Honore’s alleged injury,[2] Ed-monds concluded that Honoré had violated departmental policies by failing to respond to a radio call, failing to follow a directive, and being insubordinate to her supervisor. Edmonds testified that Honore’s actions and violations of departmental policy during the incident on October 12,2012 served as the cause for her emergency suspension. Edmonds approved the letter, dated October 17, 2012, notifying Honoré of her emergency suspension. Edmonds was on medical leave on December 12, 2012, when the Department sent the notification of pre-termination hearing, and on January 9, 2013, the date of the pre-termination hearing. Edmonds was informed about the pre-termination proceeding | Rand Honore’s termination by Jerry Conner. According to Edmonds, the termination of Honoré, by letter dated January 14, 2013, was a final disciplinary action taken by the Department for Honore’s actions and violations during the October 12, 2012 incident.
Jerry Conner testified regarding the Department’s chain of command and departmental policies and regarding the meeting with Honoré and Bridgewater on October 16, 2012. Conner testified that department policy requires Parking Control Officers to work in pairs during the *1126 evening- shift of 3p.m., to 11p.m.; .and,, if one of those officers leaves before the end of the Shift, the remaining officer will be teamed up with another officer or the supervisor. Department policy also requires that -Parking Control--Officers’ follow all job-related directives from their supervisor.
With regard to the incident reported on October 12, 2012, Conner testified that he missed calls' from Bridgewater on _ that date. When Conner returned Bridgewa-ter’s call, Bridgewater informed him that Honoré refused to complete her evening shift with him and that both Bridgewater and Honoré had written out statements about the incident. ■ The day after the incident, Conner went into work and reviewed both statements. Then, on October 16, 2012,' Conner participated in the meeting with Edmonds, during which they took further statements from Honoré, Bridgewater, and Johnson. Following that meeting, Conner concluded that Honqre had violated departmental policies by refusing to follow a directive from her supervisor.
|7On cross-examination, Honoré asked Conner how she could be recommended for termination when she followed the directive of Bridgewater to meet him at the auto pound. Conner responded that she failed to follow Bridgewater’s original directive to park the truck in front of the office, wait for him to.pick her up, and continue the shift. Conner also stated that he believed Bridgewater’s statement that Honoré refused to work with him, rather than Honore’s claim that she told him she was sick and wanted to leave early. With regard to the disciplinary actions taken in response to Honore’s action, Conner stated that an employee’s refusal to follow a directive creates a negative impact on the operations of the Department.
After the - hearings, on . March 21, 2013 and-May 16, 2013, the hearing examiner issued its report to the Commission and recommended that Honore’s appeal be denied. On April 23, 2014, the Commission issued its ruling denying Honore’s appeal of her-, termination.
The Commission’s decision states that the Commission reviewed all testimony and evidencé presented at the hearing; but the decision only discusses the testimony of Bridgewater and Honoré. The Commission primarily' relies on Bridgewater’s testimony regarding the incident on October 12, 2012; but the Commission notes Honore’s conflicting testimony that she did not refuse to work with Bridgewater and that she informed him she was sick and wanted to leave early. Stating that it found Bridgewater’s version of events “more credible,” the Commission ultimately concludes that the Department established by a preponderance of evidence legal cause for disciplinary action. Finally, the Commission states, “[wjhile the Appellant had no significant disciplinary history, hand a lesser penalty would have been appropriate, we cannot say that the Appointing Authority abused its discretion by terminating her employment.”
STANDARD OF REVIEW
The Louisiana Constitution Article 10, § 8 provides in pertinent part, “No person who has gained permanent status in the classified state or city service shall be subjected to - disciplinary action except for cause expressed in writing." See Walter v. Department of Police of City of New Orleans, 454 So.2d 106 (La.1984). A civil service employee- subjected to disciplinary action by his or her appointing authority has 'the right of appeal to the Civil Service Commission. La. Const. Art. 10 §§ 8, 12; See, e.g., Adams v. Dept. of Police, 08-0468, p. 2 (La.App. 4 Cir. 2/12/09), 7 So.3d 763, 765. On appeal *1127 to the Commission, the Appointing Authority must prove by a preponderance of the evidence good or lawful cause for taking disciplinary action. See, e.g., Cure v. Dept. of Police, 07-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094. Good or lawful cause for disciplinary action exists if the employee’s conduct impairs the efficient operation of the public service in which the employee is engaged. Bell v. Dept. of Police, 13-1629, p. 5 (La.App. 4 Cir. 5/21/14), 141 So.3d 871, 874 (quoting Pope v. New Orleans Police Dep’t., 04-1888, p. 6 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 5). Thus, the Appointing Authority has the burden to prove, by a preponderance of evidence, that the act or infraction occurred and that such act or infraction bore a real and substantial relationship to the operation of the public service. Cure, 07-0166, p. 2, 964 So.2d at 1094.
The Commission must then determine independently from the facts presented whether the legal cause for disciplinary action has been established and, if so, whether that disciplinary action is commensurate with the employee’s ^detrimental conduct. See Bell, 13-1529, p. 5, 141 So.3d at 874-75. The Commission has the duty and authority to affirm, reverse, or modify the action taken by the Appointing Authority. Clark v. Dept. of Police, 12-1274, p. 4 (La.App. 4 Cir. 2/20/13), 155 So.3d 531, 534.
The final decision of the Commission is subject to review on any question of law or fact upon appeal to the court of appeal. La. Const. Art. 10 § 12; Cure, 07-0166, p. 2, 964 So.2d at 1094. The appellate court reviews the Commission’s findings of fact under a clearly wrong or manifest error standard of review. Cure, 07-0166, p. 2, 964 So.2d at 1094. In reviewing the Commission’s determinations of whether legal cause existed and whether the discipline is commensurate with the infraction, the appellate court should not modify or reverse the Commission’s decision unless it is arbitrary, capricious, or characterized by an abuse of discretion. Clark, 12-1274, p. 5, 155 So.3d at 535; Ellis v. Dept. of Police, 10-0048, p. 6 (La.App. 4 Cir. 5/12/10), 38 So.3d 1148, 1152; Bannister v. Dept. of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647. A decision is arbitrary and capricious if there is no rational basis for the action taken. Clark, 12-1274, p. 5, 155 So.3d at 535 (citing Cure, 07-0166, p. 2, 964 So.2d at 1095). Applying this standard, the appellate court must review two parts of the Commission’s decision: (1) whether the Appointing Authority established good, legal cause for taking disciplinary action; and, if so, (2) whether the punishment imposed is commensurate with the offense. Hills v. New Orleans City Council, 98-1101, p. 6 (La.App. 4 Cir. 12/9/98), 725 So.2d 55, 58.
LAW AND ANALYSIS
Initially, we note that Honóre’s pro-se appellate brief does not comply with the Uniform Rules — Courts of Appeal in that she does not make assignments of [ terror.[3] However, Louisiana law does' not require an appeal to contain particular assignments of error. See La. C.C.P. art. 2129; Merrill v. Greyhound Lines, Inc., 10-2827, p. 2 (La.4/29/11), 60 So.3d 600, 601. When an appeal does not contain any assignments of error, the appellate court has the authority to identify and address issues raised within the appeal and render any *1128 judgment that is just, legal, and proper upon the record on appeal. See La. C.C.P. art. 2164; Byrd v. Dept. of Police, 12-1040, p. 12-13 (La.App. 4 Cir. 2/6/13), 109 So.3d 973, 982; Merrill, 10-2827, p. 2, 60 So.3d at 601.
There are four issues raised within Hon-ore’s pro-se appeal: (1) whether Honore’s due process rights were violated; (2) whether the Commission acted in an arbitrary or capricious manner or abused its discretion in determining the Department had legal cause for discipline; (3) whether the Commission’s decision to uphold Hon-ore’s termination ,was arbitrary and capricious or an abuse of discretion; and (4) whether Honoré was deprived of a full, fair hearing on appeal to the Commission.
The first issue raised by the appeal is whether the Department failed to comply with due process requirements. Hon-oré argues that the notification of her- termination was “not legal” and the hearing examiner found that she was “not properly terminated.”
In Cleveland Bd. of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the United States, Supreme Court set forth the minimum due process requirements that must be met prior to the discharge of a tenured public employee.
The essentml requirements of due pro-, cess ... are notice.and an opportunity to respond_ The tenured public employee is entitled to |uoraI or written' notice of. the charges against him, an explanation of the employer’s evidence, and an opportunity to present his side of the story.... To require more than this prior to termination would intrude to an unwarranted extent on the government’s interest in quickly removing an unsatisfactory employee, (citations omitted)
Id., 470 U.S. at 546, 105 S.Ct. at 1495. The Louisiana' Constitution also requires that any civil service employee' subjected to discipline shall be notified in writing of the cause for disciplinary action. La. Const. Art. 10, § 8(A); see Henderson v. Sewerage and Water Bd., 99-1508 (La.App. 4 Cir. 12/22/99), 752 So.2d 252, 253-54; Riggins P. Department of Sanitation, 92-1921 (La.App. 4 Cir.1993), 617 So.2d 112.
Applicable to the instant case, Rule IX, § 1.2 of the New Orleans Civil Service Commission provides, “[i]n every case of termination of employment of a regular employee, the appointing authority shall conduct a pre-termination hearing as required by law and shall notify the employee of the disciplinary action being recommended prior to taking the action.” Pursuant to Civil Service Rule IX, § 1.2 and in light of Louderville, this Court has held that an employee is entitled to advance notice of the charges prior to the pre-termination hearing; and. such notice “should fully describe the conduct complained of, setting forth the relevant dates and places and the names of witnesses against the employee to enable the employee to fully answer and prepare a defense.” Williams v. Dept. of Prop. Management, 02-1407, p. 4 (La.App. 4 Cir. 4/16/03), 846 So.2d 102, 105; see Riggins, 617 So.2d at 115.
Pursuant to the applicable jurisprudence and Civil Service Rules, we find the Department complied with due process by sending advance notice to Honoré of her alleged misconduct and infractions prior to the pre-termination hearing, informing her of the relevant facts, dates, and witnesses, notifying her of the disciplinary Inaction being considered, and notifying her of the right to present a defense at the hearing and her right to appeal. The notification of emergency suspension, dated October *1129 17, 2012, provided a synopsis of the incident that occurred on October 12, 2012; identified the actions by Honoré that constituted violations of departmental policy and the Parking Division’s Code of Conduct; and informed her that there would be a further investigation and that this was not a final disciplinary action. - The notification dated December 12, 2012 informed Honoré that a pre-termination hearing would be conducted on January 9, 2013 to determine whether she would be terminated. The pre-termination notification also provided a- synopsis of the October 12 incident; provided details from the meeting on October 16, 2012 and findings from the investigation into the October 12 incident; and informed her of her right to present her “side of the case” at the pre-termi-nation hearing and her right- to appeal disciplinary action. Following the pre-ter-mination hearing, the Department notified Honoré of her termination, by letter dated January 14, 2013, as a result of the investigation and pre-termination hearing regarding the October 12, 2012 incident. The termination letter also notified Honoré of her right to appeal her termination’ to the Commission within thirty days of the date of the letter. Considering the foregoing, we find no indication that thé Department failed to comply with due procéss requirements.
Now we turn to address whether the Commission abused its discretion in determining that the Department established legal cause for taking disciplinary action. In addressing this issue, we also address two arguments raised by Honoré. Honoré argues that the testimony at the hearing established that she did not refuse Bridgewater’s directives and she was not insubordinate. She also argues that the Commission improperly, based its decision on Bridgewater’s testimony and I ^“hearsay information.”- Thus, she argues that the Commission’s determination that there was legal cause for discipline was characterized by1 an abuse.of discretion. Upon our review of the record, we find no merit in her arguments, and we find no abuse of discretion in the Commission’s determination that the’ Department established -legal cause for- discipline.
The record -shows that the Department presented testimony and documentary evidence of its investigation into the October 12, 2012 incident-that was conducted prior to taking disciplinary action. The Depart-mént’s investigation included consideration of written statements, interviews with the involved parties, and a police investigation of Honore’s allegations. Edmonds and Conner testified that the investigation into the incident led them to conclude that Honóre violated departmental policies by failing to respond to radio calls from her supervisor, failing to follow her supervisor’s directive to complete the shift with him, and being insubordinate to her supervisor.. Edmonds and Conner further testified that the Department took disciplinary action against Honoré based on her actions during the October. 12, 2012 incident, which constituted violations of departmental policy that negatively impact the efficient operation of the public service provided by the Department.
Honoré argues, however, that the testimony of Edmonds and Conner is improper hearsay evidence because neither was present at the October 12, 2012 incident. We find no merit to this argument. First, we note that hearsay evidence may be admitted in administrative hearings if it is competent evidence. Diggs v. Dept. of Police, 12-1276, p. 7 (La.App. 4 Cir. 4/24/13), 115 So.3d 1150, 1154; Broaden v. Dept. of Police, 03-1427, pp. 6-7 (La.App. 4 Cir. 1/14/04), 866 So.2d 318, 322; Taylor v. New Orleans Police Department, 00-1992 (La.App. 4 Cir. *1130 1412/12/01), 804 So.2d.769, 772. Hearsay evidence qualifies as competent evidence if it has a degree of reliability and trustworthiness such that a reasonable person would rely upon it. Broaden, 03-1427, p. 7, 866 So.2d at 322. In this case, Edmonds and Conner testified regarding what each learned 'during the investigation into the incident, particularly during the October 16, 2012 meeting with Honoré,. Bridgewa-ter, and Johnson; each also testified regarding the policies, procedures, and administrative structure of the Department. We find.their testimony qualified as competent evidence and was properly admitted at the hearing. Regardless, the Commission’s. decision does not refer to the testimony of either Edmonds or Conner; the Commission specifically relied upon the testimony of Bridgewater and Honoré in its conclusion that the Department established by a preponderance of evidence the legal cause for disciplinary action.
Honoré also argues that the Commission improperly based its decision on Bridgewater’s testimony and did not consider her testimony that she told Bridgéwater she was sick, she followed his directive to meet him, and she did not refuse any of his directives. We find no merit to this argument. Although we note that the Commission’s decision primarily discusses • Bridgewater’s ■ testimony and briefly discusses the differences in Hon-ore’s testimony, we cannot say the Commission manifestly erred in finding Bridge-water’s version of events more credible. “When there, is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not bo disturbed on review. When there are two permissible views of the evidence, the fact finder’s choice.cannot be manifestly erroneous.” Saacks v. City of New Orleans, 95-2074, p. 13 (La.App. 4 Cir. 11/27/96), 687 So.2d 432, 440; see Stokes v. Code Enforcement & Hearings Bureau, 13-0203, p. 4 (La.App. 4 Cir. 10/2/13), 126 So.3d 590, 593. 15Here, the Commission reviewed all testimony and documentary evidence received at the hearing, which included the evidence and statements considered by the Department in its'investigation. Based upon the record, we find the Commission made a reasonable evaluation of the testimony in concluding that Bridge-water’s version of events was more credible.
Furthermore, we find the record provides a rational basis for the Commission’s determination that the Department established by a preponderance of evidence the legak cause for taking disciplinary action. The record includes testimony that Honoré failed to respond to a radio call from her supervisor and failed to follow a directive from her supervisor on October 12, 2012. The record also includes testimony and documentary evidence that Honore’s actions constituted a violation of-the Department’s Standard Operating Procedures and Parking Division’s Code of Conduct.[4] *1131 ■Finally, the record includes testimony that such violations of departmental policies impair the efficient operation of the public hnservice. Based on this record, we find a rational basis for the Commission’s decision. Therefore, the Commission did not abuse its discretion in concluding that the Department established legal cause for taking disciplinary action against Honoré.
Next, we review whether the disciplinary action taken, i.e., termination, was commensurate with Honore’s offense’. Although the record provides' a rational basis for determining that the Department had legal cause to take disciplinary action against Honoré, we find the record does not provide a rational basis for the Commission’s conclusion that termination was an appropriate disciplinary action, commensurate with the offense. See Adams v. Dept. of Police, 13-0200, p. 8 (La.App. 4 Cir. 12/18/13), 131 So.3d 378, 383 (“The evidence in the record must establish a rational basis for the imposed discipline.”); Staehle v. Dept. of Police, 98-0216, p. 5 (La.App. 4 Cir. 11/18/98), 723 So.2d 1031, 1034.
Termination from permanent employment is the most extreme form of disciplinary action that can be taken against a city employee. Hills v. New Orleans City Council, 98-1101, p. 6 (La.App. 4 Cir. 12/09/98), 725 So.2d 55, 58. Cause that may justify some, other lesser form of disciplinary action may not necessarily justify a dismissal. Dept. of Public Safety and Corrections, Office of State Police v. Mensman, 95-1950, p. 4 (La.4/8/96), 671 So.2d 319, 321. In reviewing the disciplinary action taken by the Appointing Authority, “the Commission must consider whether the .punishment was commensurate with the proyen infractions under the circumstances.” Id., 95-1950, p. 5, 671 So.3d at 322. The nature of the offense in question is one factor to be considered by the Commission- when determining whether the punishment imposed is commensurate with the offense. h?Other factors to be considered include the employee’s work ethic,. prior disciplinary records, job evaluations, and . any grievances filed by the employee. See Hills, 98-1101, p. 6, 725 So.2d at 58.
In its conclusion regarding the discipline imposed, the Commission ■ only stated, “[w]hile the appellant had no- significant disciplinary history, and a lesser penalty would have been -appropriate, we cannot say that the Appointing. Authority abused its discretion by terminating her employment.” Based on our review of the record, however, the Department did not introduce any evidence of Honore’s previous disciplinary history, work history, or work ethic.[5] Although the notification of emergency suspension and the pre-termination notification list other’ “examples of [Hon-ore’s] violations” of departmental policies, the Department did not introduce documentary. evidence or testimony of these *1132 violations or prior disciplinary action at the hearing.
The evidence and testimony established that Honore’s acts on October 12, 2012 violated departmental policies by failing to follow a directive from her supervisor. We note that there was also testimony that any employee’s failure to follow a directive impairs the efficient operation of the service provided by the Department. However, we find no evidence in the record that Honore’s actions ori that'date were particularly egregious or representative of a broader pattern of behavior such that termination of permanent employment would be justified. Bridgewater, whose directive she failed to follow, testified that his recommendation for disciplinary action was suspension. No other witnesses 1 ^provided testimony to establish the reasons or circumstances warranting the additional, excessive discipline of termination. Furthermore, the Commission made no findings with regards to the Department’s decision to- impose additional and permanent disciplinary action after the original disciplinary action, suspending Honoré for 120 days without pay.
Upon our review of the record, we find no rational basis for concluding ’ that the final disciplinary action imposed by the Department was commensurate with Hon-ore’s infractions. See Adams, 13-0200, p. 8, 131 So.3d at 383. In consideration of the evidence and testimony presented, we find the suspension for 120 days without pay was commensurate with Honore’s infractions on October 12, 2012; but termination was an excessive disciplinary action. Consequently, we find that the Commission abused its discretion in upholding the Department’s termination of Honoré.
Finally, we address the last issue raised within Honore’s appeal. Honoré argues that she was not afforded a full, fair hearing before the Commission. In support of this argument, she alleges she was not allowed to subpoena all of her witnesses, she was instructed to narrow her witnesses down to 3 people, and she was unaware of her rights to present 'additional evidence.
The record’reflects that the Commission hearing began on March 21, 2013, recessed, and reconvened on May 14, 2013 to allow for the fact .witnesses to be present and to allow Honoré to subpoena her witnesses. At the conclusion of the March 21 session, the hearing examiner stated as follows:
MR. GINSBERG: Pursuant to an off-the-record-discussion, I have decided without objection from the parties that the matter be recessed. And we will reconvene on May 14, primarily for the testimony of the fact witness, Mr. Bridgewater, who is not available 'today because he is working a night shift.
|1sAnd at that point, the Appointing Authority will call Mr. Bridgewater as their first witness and. all other witness will follow that. And that will give you the opportunity to make sure your witnesses are available. You do understarid which witness is on [Family Medical Leave Act]?
MS. ROBINS [City Attorney]: ' Ms. Johnson
MR. GINSBERG: I don’t know whether she will still be on FMLA at that point and time. Depending on her availability, she can be here as a witness. And you should go back to where you filed your appeal to have your subpoenas resubmitted for May 14, okay? Any questions?
MS. HONORÉ: No.
Upon review of the record, we find no indication that Honoré' was denied the right to present evidence or subpoena witnesses. At the hearing, Honoré presented *1133 documentary evidence, subpoenaed witnesses on her'Behalf, and had the opportunity to' question each testifying- witness. Based on this record, we find no merit to the argument that she- was denied a full, fair hearing. ' ' "
CONCLUSION
For the foregoing reasons, we affirm the Commission’s decision, in part, finding that the Department established legal cause to take disciplinary action. We reverse .that part of the Commission's decision upholding termination and we order the Department to reinstate Honoré, subject to the suspension for 120 .days reinstated herein.
AFFIRMED IN PART; REVERSED IN PART; RENDERED.

. The Department acknowledged at the Commission hearing that the October 12/ 2Ó12 - incident served as the sole cause for disciplinary action against Honoré..

. During the October 16 meeting, Honoré "stated that Bridgewater basically assaulted her with the city vehicle” by driving the van as she attempted to exit it. Edmonds stated that she immediately recommended the New Orleans Police Department be contacted to conduct an investigation of the alleged assault; later that day, Edmonds learned from the responding police officer that there was not any evidence to determine whether the incident occurred.

, Uniform Rule, Louisiana Courts of Appeal, Rule 2-12.4. However; an assignment Of error is not necessary in an appeal.

. The December 12, 2012 pre-termination hearing letter indicates that Honore’s actions constituted violations of the following provisions:
Department of Public Works Parking Division Standard Operating Procedures, page 7 (Revised August 2001): "... Parking Control Officers are to fulfill their responsibility within the Parking Division by complying with the Parking Control Section’s Standard Operating Procedures, as well as all other applicable policies and procedures of the Parking Division, the Department of Public Works, and the City of New Orleans.”

Department of Public Works Parking Division Code of Conduct (Section 1):

“No employee shall engage in conduct .unbecoming an employee of the Department or the City of New Orleans, any violation. of the following rules may be considered grounds for disciplinary action,
• 14.Í — No PCO or Supervisor shall:
*1131 • 14.1:6 — Fail, refuse or neglect to obey any lawful orders of a superior, whether oral or written.
• 14.1.20 — Fail to perform or improperly perform assigned duties.

Department of Public Works Parking Division Code of Conduct (Section 2):

"Any violation of any of the provisions of this section shall constitute cause for fine, suspension or termination of employment.”
• 15,1 — No PCO or Supervisor shall:
• 15.1:14 — Fail to respond or acknowledge promptly, radio calls directed to member.
• 15,1:19 — Be insubordinate, insolent or impudent to superior officers,

. We note, however, that Jerry Conner testified that about a year and a half prior to the October 12 incident Honoré and Bridgewater were "suspended together” when Bridgewa-ter called Honoré on her personal cell phone and she returned the call on her personal cell phone, in violation of policy.