| | | |
|---|---|---|
| **TERRANCE SAULNY** | * | **NO. 2018-CA-1069** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **NEW ORLEANS POLICE** | * | |
| **DEPARTMENT** | | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

* * * * * * *

<u>**CONSOLIDATED WITH:**</u>  <u>**CONSOLIDATED WITH:**</u>

**TERRANCE SAULNY**  **NO. 2018-CA-1070**

**VERSUS**

**NEW ORLEANS POLICE
DEPARTMENT**

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 8351
* * * * * *
**Judge Daniel L. Dysart**
* * * * * *

**ON REMAND FROM SUPREME COURT**

(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge
Regina Bartholomew-Woods)

G. Karl Bernard
G. KARL BERNARD & ASSOCIATES, LLC
1615 Poydras Street, Suite 101
New Orleans, LA 70112
        COUNSEL FOR PLAINTIFF/APPELLEE

Elizabeth Robins
DEPUTY CITY ATTORNEY
Isaka R. Williams
ASSISTANT CITY ATTORNEY
Donesia D. Turner
SR. CHIEF DEPUTY CITY ATTORNEY
Sunni J. LeBeouf
CITY ATTORNEY
1300 Perdido Street, Suite 5E03
New Orleans, LA 70112
COUNSEL FOR DEFENDANT/APPELLANT


**AFFIRMED**

**MARCH 11, 2020**

In accordance with the directive of the Louisiana Supreme Court in *Saulny v. New Orleans Police Dep't*, 19-01366 (La. 11/12/19), 282 So.3d 210, remanding this matter for a consideration of the merits of Officer Terrance Saulny's appeal, we have reviewed the record before us and the August 24, 2018 ruling of the Civil Service Commission (the "CSC"), denying Off. Saulny's appeal of his termination.[1] For the reasons that follow, we affirm the CSC's decision to terminate Off. Saulny's employment with the New Orleans Police Department ("NOPD").

**FACTS AND PROCEDURAL HISTORY**

In June 2015, NOPD Off. Terrance Saulny was terminated from his employment with the NOPD following an investigation of an incident which occurred on September 24, 2014. On that date, Off. Saulny had an encounter with a juvenile at the Juvenile Detention Center, where he was then working. The

---

[1] Our prior decision dismissed the appeals of both Off. Saulny and the New Orleans Police Department ("NOPD") on the basis that neither party properly perfected an appeal. *See Saulny v. New Orleans Police Dep't*, 18-1069 (La. App. 4 Cir. 5/22/19), --- So.3d ----, 2019 WL 2223619, *writ granted*, *cause remanded*, 19-01366 (La. 11/12/19), 282 So.3d 219. A writ of review was sought from the Supreme Court only by Off. Saulny and not by the NOPD. Accordingly, we limit this opinion to the issues raised by Off. Saulny's appeal. We note, though, that the NOPD did not file an appellee brief, responding to the arguments raised by Off. Saulny in his appeal. Rather, the NOPD's brief was filed in its capacity as an appellant, addressing only those findings adverse to it.

encounter was captured by a security camera and, two days later, the NOPD placed Off. Saulny on emergency suspension for 120 days while it investigated the incident. Thirty-eight days of Off. Saulny's suspension was without pay.[2]

An administrative investigative report was issued, alleging that Off. Saulny had violated several NOPD rules and procedures during his encounter with the juvenile. More specifically, Off. Saulny was accused of violating rules concerning moral conduct, unauthorized force and truthfulness.[3] A hearing was then held and by letter dated June 15, 2015, Off. Saulny was notified that the charges regarding moral conduct and unauthorized force were sustained. The penalty for these violations was termination, effective June 11, 2015. Off. Saulny was advised of his right to appeal the decision to the CSC within thirty days.

Off. Saulny appealed the decision of the NOPD to terminate his employment. Hearings were then held on November 2, 2017 and December 8, 2017, before a hearing officer appointed by the CSC. Thereafter, the CSC reviewed the transcript and evidence from those hearings. By judgment dated August 24, 2018, the CSC denied Off. Saulny's appeal with respect to his termination, finding that "[t]he degree of force [he] used far exceeded what was reasonable given the situation and established [his] blatant disregard for the guidelines within the NOPD's use of force policy;" that Off. Saulny's "conduct had a substantial adverse impact on the efficient operations of [the] NOPD;" and

---

[2] The propriety of the thirty-eight day suspension without pay was addressed by the CSC, which found the suspension to have been procedurally improper and to have violated Off. Saulny's due process rights. The CSC ordered the NOPD to remit all back pay and emoluments to Off. Saulny which would have been received during the unpaid suspension. Because the NOPD did not seek a writ of certiorari from the Supreme Court from this Court's dismissal of its appeal of this ruling (*See*, footnote 1), this portion of the CSC's judgment is final. *See*, *Colins v. Magnolia Mktg. Co.*, 01-1234, p. 3 (La. App. 4 Cir. 5/8/02), 817 So.2d 1214, 1215 ("a final judgment acquires the authority of the thing adjudged . . . if no further review of the judgment is sought.").
[3] Off. Saulny was alleged to have violated Rule 2: Moral Conduct; Paragraph 6, Unauthorized Force; and Rule 2: Moral Conduct; Paragraph 4: Truthfulness.

2

that "termination is [not] so severe as to constitute arbitrary or capricious discipline."[4]

Off. Saulny's timely appeal followed.

### Standard of review

Under La. Const. Art. X, § 8 (A), "[n]o person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing." That Article further provides that a classified employee against whom disciplinary action has been taken "shall have the right of appeal" at which time, the "burden of proof . . . shall be on the appointing authority." *Id.* In the appeal, "the appointing authority [here, the NOPD] has the burden of proving, by a preponderance of the evidence: 1) the occurrence of the complained of activity; and 2) that the conduct complained of impaired the efficiency of the public service in which the appointing authority is engaged." *Clark v. Dep't of Police*, 18-0399, p. 4 (La. App. 4 Cir. 10/10/18), 257 So.3d 744, 747. The CSC must "determine independently from the facts presented whether the legal cause for disciplinary action has been established and, if so, whether that disciplinary action is commensurate with the employee's detrimental conduct." *Honore' v. Dep't of Pub. Works*, 14-0986, pp. 8-9 (La. App. 4 Cir. 10/29/15), 178 So.3d 1120, 1127, *writ denied sub nom. Honore' v. Dep't of Pub. Works*, 15-2161 (La. 1/25/16), 185 So.3d 749. The CSC, as the appointing authority in this case, "has the duty and authority to affirm, reverse, or modify the action taken by the Appointing Authority." *Id.*, p. 9, 178 So.3d at 1127.

---

[4] With respect to the other charge against Off. Saulny regarding truthfulness, the CSC found that the NOPD failed to meet its burden of proof to substantiate that charge (and, even had that charge been proven, "such misconduct was not a material fact related to [Off. Saulny's] use of force). Accordingly, Off. Saulny's termination was based solely on the unauthorized force charge.

The standard of review by an appellate court of a ruling of the CSC is well-settled; an appellate court is to apply a "clearly wrong or manifestly erroneous standard of review" when evaluating the CSC's factual findings. *Charles v. New Orleans Police Dep't*, 19-0115, p. 2 (La. App. 4 Cir. 6/19/19), 274 So.3d 914, 916, *writ denied*, 19-01144 (La. 10/8/19), 280 So.3d 589. As we noted in *Charles*, in "'evaluating the [CSC's] determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the court should not modify the [CSC's] order unless it is arbitrary, capricious, or characterized by abuse of discretion.'" *Id.*, quoting *Bannister v. Dep't of Streets*, 95-0404, p. 8 (La. 1/16/96), 666 So.2d 641, 647. A decision is considered to be "'arbitrary or capricious' when there is no rational basis for the action taken." *Id.*

Appellate courts "do not re-weigh the evidence, or make . . . credibility determinations regarding the witnesses, or substitute [their] findings for those of the Commission and its referee." *Harrell v. Dep't of Health & Hosps., Office for Citizens with Developmental Disabilities, Pinecrest Supports & Servs. Ctr.*, 10-0281, p. 11 (La. App. 1 Cir. 9/10/10), 48 So.3d 297, 305, (citing *Louisiana Household Goods Carriers v. Louisiana Public Service Com'n*, 99-3184 (La.6/30/00), 762 So.2d 1081, 1085). Thus, "[u]nless the record contains insufficient evidence to support the [CSC's] decision or shows that the decision was clearly wrong, the decision must be affirmed. *Davis v. Dep't of Police*, 590 So. 2d 850, 851 (La. App. 4 Cir. 1991).

**DISCUSSION**

In this appeal, although Off. Saulny identifies three assignments of error, he makes one argument – that "[t]he [CSC] failed to consider relevant and admissible evidence beyond the dramatic and misleading video footage of the incident and

4

therefore reached an erroneous conclusion as to the appropriate punishment due Off. Saulny, if any."[5]

Having carefully reviewed the record, we do not find the CSC's factual finding, that Off. Saulny violated the use of force policy, to be manifestly erroneous. To the contrary, we find that the CSC did not act arbitrarily and capriciously in reaching this conclusion. We likewise disagree with Off. Saulny that the CSC manifestly erred in finding the penalty imposed to be appropriate for Off. Saulny's infraction. We find that Off. Saulny was disciplined for cause and that, under the circumstances of this case, there was a rational basis for the termination of Off. Saulny's employment with the NOPD. Moreover, on its own, the videotape that captured the incident was sufficient evidence to warrant these findings. We, thus, do not find any evidence that the CSC's decision was arbitrary, capricious, or an abuse of its discretion.

"Rule 2 Section 6 of the NOPD's operations manual states: 'Employees shall not use or direct unjustifiable physical abuse, violence, or force or intimidation against any person.'" *Taylor v. Dep't of Police*, 13-1367, p. 5 (La. App. 4 Cir. 4/16/14), 140 So.3d 231, 234, *writ denied*, 14-1032 (La. 9/12/14), 148 So. 3d 931.

At the November 2 and December 8, 2017 appeal hearing, several witnesses were questioned about the videotape of the September 24, 2014 incident and gave their interpretation of what is depicted therein. Former NOPD Officer Andre LeBlanc, who was then a member of the Public Integrity Bureau's Force

---

[5] Those assignments of error are listed as follows: (1) "The [CSC] failed to appropriately consider all relevant and admissible evidence of facts preceding to [sic] the interaction between Officer Saulny and the juvenile detainee in the holding cell;" (2) The [CSC] failed to appropriately apply the prescribed analysis for determining the propriety of the punishment rendered, given that this was Officer Saulny's first offense;" and (3) "The [CSC] accepted without question conclusory testimony adduced at the November 2, 2017 hearing from Officer Saulny's supervisors."

5

Investigation Team, which investigated the incident, for example, testified that, based on his "experience and [his] reviewing of the use of force that [Off. Saulny] did himself, it appeared to be excessive force based on my experience." Similarly, Deputy Superintendent of the Investigative Support Bureau, Rannie Mushatt, III, who conducted a disciplinary hearing in June 2015, testified that "the force [used by Off. Saulny] was excessive" given that the juvenile "was passively resisting and Officer Saulny struck her with his cuffs, his shackles."[6]

In reviewing the definitions of active and passive resistance, Deputy Superintendent Mushatt testified that the video showed that the juvenile did not exhibit behavior consistent with active resistance. To the contrary, her actions were consistent with passive resistance. Deputy Superintendent then testified that a violation of the NOPD's policy against unauthorized force, category 3, first offense, carries a penalty ranging from a thirty-day suspension to dismissal.[7] Under the circumstances of this case, according to Deputy Superintendent Mushatt,

---

[6] As Deputy Superintendent testified, Policy 300, Use of Force, of the New Orleans Police Department Policy Manual, defines "passive resistance" as "[b]ehavior that is unresponsive to police verbal communication or direction (ignoring or disregarding police attempts at verbal communication or control; going limp; or failing to physically respond or move) and verbal resistance (verbally rejecting police verbal communication or direction; telling the officer that he or she will not comply with police direction, to leave alone, or not bother him or her). Bracing, tensing, linking arms, verbally signaling an intention to avoid or prevent being taken into custody constitutes passive resistance." Active resistance, on the other hand is defined as "[a] subject attempts to attack or does attack an officer; exhibits aggressive behavior (lunging toward the officer, striking the officer with hands, fists, kicks, or any instrument that may be perceived as a weapon such as [a] knife or stick); or exhibits defensive resistance (attempts to leave the scene, flee, hide from detection, or pull away from the officer's grasp). Verbal statements, bracing or tensing alone do not constitute active resistance."

[7] The NOPD Procedure Manual classifies penalties in three categories. As this Court explained in *Cunningham v. New Orleans Police Dep't*, 18-0095, pp. 6-7 (La. App. 4 Cir. 10/10/18), 257 So.3d 801, 805-06, those categories are based on the "seriousness of offenses. Category 1, which is considered minor, consists of the following: "(a) Does not affect the rights or liberties of another; (b) Involves only an administrative investigation or violation; and/or (c) Does not affect job performance." Category 2, which is considered moderate, consists of the following: "(a) May affect the rights or liberties of another; (b) Involves only an administrative investigation or violation; and/or (c) May affect job performance." Category 3, which is considered major, consists of the following: "(a) May affect the rights or liberties of another; (b) May affect job performance; and/or (c) Involves a serious administrative or criminal violation."

Off. Saulny's actions constituted "a serious violation and affected the rights of [the juvenile]," warranting Off. Saulny's dismissal.

In its August 24, 2018 judgment, the CSC agreed with Deputy Superintendent Mushatt that the juvenile "engaged in 'text book' passive resistance by folding her arms and failing to comply with [Off. Saulny's] directions." It then noted that "[a]t no point in time during the thirty-second exchange [did the juvenile] actively resist [Off. Saulny]." On the other hand, "[Off. Saulny] use[d] all of his strength to push [the juvenile] against the wall and shoved his forearm under her chin." He then "[made] matters worse" by using "the four-point restraints as a weapon and repeatedly struck [the juvenile] with them (including her head and shoulders)." The CSC noted "no exigent circumstances that prevented [Off. Saulny] from carefully considering the appropriate application of force."

The CSC weighed and rejected Off. Saulny's arguments – that he was simply trying to put shackles on the juvenile and that he wasn't trying to injure her – noting that it was "readily apparent that he was not trying to place the restraints on [the juvenile]" when he struck her. The CSC also rejected Off. Saulny's objections to questions regarding the size disparity between him and the juvenile, commenting that the "NOPD's Use of Force Policy clearly identifies the relative size of the officer and subject as a factor in determining whether or not the officer's use of force was reasonable."[8] The CSC concluded as follows:

---

[8] The NOPD's Policy Manual lists the following factors to be considered in determining the reasonableness of force: (a) whether the subject poses a threat to himself, officers or others and the immediacy and severity of the threat; (b) the conduct of the individual being confronted as reasonably perceived by the officer at the time; (c) Officer/subject factors (age, size, relative strength, skill level, injuries sustained, level of exhaustion or fatigue, the number of officers versus subjects); (d) the effects of drugs or alcohol; (e) the subject's mental state or capacity; (f) the proximity of weapons or dangerous improvised devices; (g) the degree to which the subject has been effectively restrained and his/her ability to resist despite being restrained; (h) the availability of other options and their possible effectiveness; (i) the seriousness of the suspected

7

> The degree of force [Off. Saulny] used far exceeded what was reasonable given the situation, and established [Off. Saulny's] blatant disregard for the guidelines within NOPD's use of force policy. One such guideline states that, "[o]fficers shall not use force above un-resisted handcuffing to overcome passive resistance." Since [the juvenile] offered only passive resistance, [Off. Saulny's] shocking and dramatic physical intervention clearly violated the policy.

With respect to the penalty of termination, the CSC recognized that, while Off. Saulny did not have any prior sustained complaints against him regarding his use of force, under the circumstances of this case, his "use of force was a major disciplinary infraction and represented a dramatic violation of the use of force guidelines established by NOPD. While NOPD had other options available, the [CSC] does not believe that termination is so severe as to constitute arbitrary or capricious discipline."

Off. Saulny argues that "[a]lthough [his] conduct appears harsh at first glance, the use of force did not result in any injury to the juvenile detainee and was in fact effective in preserving not only her own safety, but the safety of those around her." We disagree and find this argument to be belied by the videotape of the incident, which depicts the following:

Initially, the juvenile is standing alone in a holding cell, with both of her arms tucked into her short-sleeved t-shirt. Thirty seconds into the video, the juvenile kicks the door once with the back of her socked foot. Approximately thirty seconds later, she again kicks the door several times. Another forty seconds

---

offense or reason for contact with the individual; (j) the training or experience of the officer; (k) the potential for injury to the subject, officers, suspects and others; (l) whether the person appears to be resisting, attempting to evade arrest by flight or is attacking the officer; (m) the risk of escape; (n) the apparent need for immediate control of the subject or a prompt resolution of the situation; (o) whether the conduct of the individual being confronted no longer reasonably appears to pose an imminent threat to the officer or others; and (p) any other exigent circumstances.

later, she kicks the door three times.  She then kicks the door several times about forty seconds after that.

Approximately twenty-five second later, Off. Saulny enters the holding cell, holding four-point restraints.[9]  At this time, the juvenile's arms are still tucked into her t-shirt.  She sits on a bench, then arises with her back turned away from Off. Saulny.  She removes her arms from inside her shirt, turns to face Off. Saulny and words are exchanged between the two.[10]  Off. Saulny then forcibly pushes her towards the bench, and the juvenile braces herself with her right hand against the wall.  Next, with both of his hands on the back of her shoulder, Off. Saulny  pushes her against the adjacent wall and in doing so, puts his forearm under her neck. In the ensuing seconds, Off. Saulny strikes the juvenile with the restraints, raising his arm high in the air before striking her in the head, as the juvenile ducks and puts her hands over her head in a defensive maneuver.

Another officer then enters the room to assist Off. Saulny.  While the two officers push the juvenile to the floor, Off. Saulny can be seen striking the juvenile again with the restraints.

This video confirms the CSC's findings that Off. Saulny violated the NOPD's policies regarding use of force.  Likewise, the video confirms that the juvenile engaged in passive behavior and, at no time, exhibited behavior consistent with active resistance (*See* footnote 6).  Moreover, in reviewing the factors to be considered in weighing the reasonableness of the force, as outlined in the NOPD's Policy Manual (*See* footnote 8), we find that many of the factors weigh against a

---

[9] As indicated by the CSC in its judgment, "[f]our-point restraints are made out of steel and resemble handcuffs.  There are two sets of 'cuffs[;]' one set attaches to a subject's wrists and another set to a subject's ankles.  There is a long chain that connects the two sets."
[10] The video contained in the record does not have sound.

finding that Off. Saulny's actions were reasonable: the juvenile posed no threat to either herself or Off. Saulny; Off. Saulny clearly outweighed and outsized the juvenile; there were no weapons/dangerous improvised devices within the juvenile's reach; the juvenile did not resist being restrained; options other than shoving and striking the juvenile were available; the only potential injury was to the juvenile resulting from Off. Saulny's actions and she posed no risk of injury to Off. Saulny; and, there was no risk of escape or a need for "immediate control of" the juvenile.[11]

Off. Saulny argues that he entered the cell and "was trying to keep her from hurting herself" because "she was wearing only socks at the time and can be seen clearly in the video exerting great force on her lower legs and ankles as she slams her unprotected feet into the door." This argument in no way explains or justifies his actions in shoving the juvenile and striking her more than once with his restraints, when she offered no resistance or appeared in any way combative.

Off. Saulny also argues that the CSC failed to consider other relevant evidence; namely, that, as Off. Saulny testified, prior to the juvenile's arrival at the detention center, he had been apprised by another officer that the juvenile put up resistance when arrested, was irate while riding in the police car and "was banging her head on the door of the facility." He maintains that this information was ignored by the CSC as "irrelevant." He also argues that the CSC erred in denying his request to review the video footage "depicting his initial placing of [the juvenile] into the cell" as not relevant.

---

[11] For many of the other factors, (*e.g.*, the juvenile's mental state, the offense for which the juvenile had been arrested), the record does not provide sufficient information for their consideration.

We are not persuaded by Off. Saulny's argument.  Even assuming that the juvenile had been recalcitrant at the time of her arrest and prior to her being placed in the holding cell, these facts do not justify the manner in which Off. Saulny handled the juvenile and certainly do not explain why Off. Saulny struck the juvenile with the restraints more than once.  We find no merit to Off. Saulny's arguments.

We likewise find no merit to Off. Saulny's argument that the CSC erred in failing to admit and consider the video of his placing the juvenile into the holding cell.  This Court has noted that the CSC "is not bound by the technical rules of evidence," *St. Martin v. Dep't of Police*, 558 So. 2d 247, 249 (La. App. 4 Cir. 1989) and that "[i]t is well established that the 'usual rules of evidence need not apply to an administrative hearing.'"  *Davis v. Dep't of Police*, 590 So. 2d 850, 852 (La. App. 4 Cir. 1991).  In other civil matters, there is no question that the trier of fact has discretion as to the admissibility of evidence.  *See*, *e.g.*, *Radlein v. Holiday Inns, Inc.*, 07-0322, p. 6 (La. App. 4 Cir. 11/14/07), 971 So.2d 1200, 1204; *Boykins v. Boykins*, 04-0999, p. 4 (La. App. 4 Cir. 4/24/07), 958 So.2d 70, 74; *Miller v. Southern Baptist Hospital*, 00-1352 p. 5 (La. App. 4 Cir. 11/21/01), 806 So.2d 10, 15.  As we found in *Radlein*, a trier of fact's "broad discretion includes the right to refuse or limit discovery of matters that are not relevant to the issues." *Radlein*, p. 6, 971 So.2d at 1204.

In this matter, we do not find any error in the failure to allow the introduction of the video of Off. Saulny's interaction with the juvenile prior to her being placed in the holding cell.  Whatever took placed at that time does not have any bearing on the manner in which Off. Saulny treated the juvenile as depicted in the video in the record.  Nor, again, does it have any bearing on Off. Saulny's

11

decision to strike the juvenile more than once with the restraints. It is clear that, under the circumstances of this case, Off. Saulny's actions violated Rule 2 Section 6 of the NOPD's operations manual, which prohibits the "direct unjustifiable physical abuse, violence, or force or intimidation against any person."

Turning to the question of whether the penalty was commensurate with the infraction, we recognize that dismissal is the harshest penalty; however, the range of penalties provided in the NOPD penalty matrix includes dismissal. Furthermore, as the CSC noted, the NOPD's use of force policy:

> . . . recognizes and respects the value of all human life and dignity without prejudice to anyone. Vesting officers with the authority to use reasonable force and to protect the public welfare requires monitoring, evaluation and a careful balancing of all interests.

The CSC then noted:

> When an officer fails to follow the guidelines established by the policy, he or she compromises NOPD's ability to balance the authority vested in officers with the rights of residents. The policy is replete with warnings to officers to carefully consider the circumstances prior to using force. Residents depend upon officers to follow use of force guidance and any failure to do so compromises the trust the public has in NOPD.

In this case, the CSC found that Off. Saulny, through his actions, "demonstrated that he did not respect the limitations of his power and authority," which "had dire consequences for [the juvenile] who suffered unjustified violence at the hands of [Off. Saulny]." The CSC also determined that Off. Saulny's "unjustified and excessive use of force on a juvenile inmate also reflected poorly on NOPD as a law enforcement entity" and concluded that because "of the foregoing, . . . [Off. Saulny's] conduct had a substantial adverse impact on the efficient operations of [the] NOPD."

Based upon our review of the record, we cannot say that the decision of the CSC in this regard was arbitrary and capricious. *See Rivet v. Dep't of Police*, 18-0229, p. 10 (La. App. 4 Cir. 10/24/18), 258 So.3d 111, 120 ("[i]t is well-settled that this Court should not modify the discipline imposed by the CSC unless it was 'arbitrary, capricious, or characterized by an abuse of discretion.'")(citation omitted). In our view, it is clear Off. Saulny's conduct clearly interfered with the efficient operations of the NOPD, violated the trust the public must have in the police force, and justified his termination. We thus find that the CSC did not abuse its discretion in denying Off. Saulny's appeal of his termination.

**CONCLUSION**

For the foregoing reasons, we find that the record before us supports the termination of Off. Saulny's employment with the NOPD. Because we do not find any manifest error in the CSC's judgment, we affirm that judgment.

**AFFIRMED**

13