BELSOME, Judge.
_JjThe New Orleans Police Department seeks review of the Civil Service Commission’s ruling to reinstate Officer Chadwick Taylor. We affirm.

FACTS AND PROCEDURAL HISTORY

On the morning of September 24, 2010, New Orleans Police Department Narcotics Detective, Chadwick Taylor, dressed in plain clothes, was participating in a narcotics investigation involving a student at Warren Easton. After observing a drug transaction, Detective Taylor, identified himself as an officer and placed the juvenile subject, whom he had identified as the distributor, under arrest.[1] When the arrested subject resisted, yelled profanities, and punched Detective Taylor, a fight ensued. The struggle went to the ground and continued until additional officers arrived and assisted in affecting the arrest.
As a result of the altercation, the arrested subject’s family called the Public Integrity Bureau to make a complaint, alleging that the arrested subject was beaten during the incident. Sergeant Darryl Watson was assigned to investigate theRcomplaint. He interviewed several witnesses with varying accounts of the altercation. In totality, it was alleged that the arrested subject was beaten with guns, radios, and kicked in the head by an individual fitting Detective Taylor’s description, who was wearing tan Timberland boots. In his statement to the PIB, Detective Taylor, who admitted that he was wearing Timberland boots on the day in question, denied ever kicking the arrested subject in the head. The assisting officers’ further corroborated this fact in their statements.
After a disciplinary hearing, Detective Taylor was suspended for twenty days for violating departmental rules regarding using Unauthorized Force. The NOPD found that Detective Taylor kicked the arrested subject several times after he stopped resisting. In addition, he was terminated for violating departmental rules regarding Honesty and Truthfulness in his administrative statement, when he denied ever kicking the arrested subject. Detective Taylor timely appealed to the Civil Service Commission.
Following an evidentiary hearing, the hearing examiner issued a report, which concluded that the NOPD failed to meet its burden of proof that Detective Taylor was disciplined for just cause. In a subsequent ruling, the Commission largely adopted the hearing examiner’s position. Thus, it granted Detective Taylor’s appeal, and reinstated him to the NOPD with back pay. That ruling is the subject of this appeal.

{STANDARD OF REVIEW

It is well settled that when determining if the disciplinary action taken by the appointing authority was based on good cause and commensurate with the infraction, this court will not modify the order of the Commission unless the decision was arbitrary, capricious or characterized an abuse of discretion. Pearson v. Dept. of Police, 09-0725, p. 7 (La.App. 4 Cir. 11/12/09), 26 So.3d 264, 268 (citing Cure v. Dept. of Police, 07-0166, p. 2 (La. App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094). On appeal to the Commission, the appoint *233 ing authority must prove, “by a preponderance of the evidence, that the complained of activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority.” Id. This Court’s review of the Commission’s findings of fact is governed by the manifestly erroneous/clearly wrong standard. Id.

DISCUSSION

The NOPD asserts three assignments of error.[2] The main issue presented from these assignments is whether the Commission erred in finding that the NOPD failed to carry its burden in proving there was just cause to discipline Taylor for excessive force and truthfulness. The NOPD argues that the Commission’s assessment of the evidence was defective, as the evidence presented was of [ ¿sufficient weight and quality to support the discipline. The department most heavily contests the lack of weight and credibility given to Mr. Guillot’s testimony.
At the evidentiary hearing, Sergeant Watson testified that various witnesses[3] reported observing an individual with a tan/gold Timberland boot, kick the arrested subject in the head. According to Sergeant Watson, some witnesses indicated that he was kicked before he was handcuffed and others indicated it was after. However, he admitted that the arrested subject himself never complained of being kicked after he was subdued.
In the end, Sergeant Watson concluded that Detective Taylor kicked the arrested subject after he was handcuffed, but while the assisting officers were handling other situations. This is the reason he believed none of the officers observed Detective Taylor kick the arrested subject. He further testified that in his administrative statement, Detective Taylor was dishonest when he denied ever kicking the arrested subject.
Though the hearing officer held the hearing open for direct witness testimony,[4] only one other witness, Joseph Guillot, testified for the NOPD. Mr. Guillot, an assistant principal for Warren Easton, testified that he observed a Timberland boot contact the arrested subject’s head, but he indicated that this all happened during the restraining process. He could not say whether it was |Bintentional. He saw a group of people attempting to restrain the arrested subject, who continued to resist.
The remaining three officers testified on behalf of Detective Taylor. None of them observed Detective Taylor kick the arrested subject. Detective Gus James, the senior officer on the scene, testified that he picked the arrested subject off of the ground immediately after he was handcuffed. Detective Taylor also testified that he never kicked the arrested subject.
*234 Rule 2 Section 6 of the NOPD’s operations manual states: “Employees shall not use or direct unjustifiable physical abuse, violence, or force or intimidation against any person.” Rule 2 Section 3 states:
Employees are required to be honest and truthful at all times, in their spoken, written or electronic communications. Truthfulness shall apply when an employee makes a materially false statement with the intent to deceive. A statement is material when, irrespective of its admissibility under the rules of evidence, it could have affected the course or outcome of an investigation or an official proceeding, whether under oath or not, in all matters and official investigations relating to the scope of their employment and operations of the Department as follows: ...
d. employees shall truthfully answer all questions directed to them on the order of the Superintendent of Police, the Superintendent’s designee, a superior officer, or any judicial, departmental, or other official investigative body.
After weighing the evidence, the Commission found that the NOPD failed to meet its burden of proof that there was just cause for the discipline. The commission clearly believed Detective Taylor’s version of the events, which was consistent with the officers on the scene. It principally relied on the officers’ testimony that the arrested subject was subdued, handcuffed, and immediately | fibrought to a police unit. Though the NOPD argues that the evidence established that the Detective Taylor kicked the arrested subject in the head when multiple officers were on top of him, the officers would have been in a position to see this. The Commission clearly credited the officers’ testimonies that they did not observe a kick over the conflicting testimonies of Sergeant Watson, who was not present and believed that the arrested subject was kicked after he was handcuffed, and Mr. Guillot, who was obviously hesitant and only observed contact during the struggle. Given the record before this Court, we cannot say that Commission was clearly wrong in its findings of fact.
Accordingly, since we do not find that the Commission acted in an arbitrary or capricious manner, the ruling is affirmed.
AFFIRMED.
JENKINS, J. Dissents and Assigns Reasons.

. As in the disciplinary hearing, the juvenile will be referred to as the "arrested subject” to protect his identity.

.The three assignments of error are: 1) The Commission erred by relying more upon the quality of evidence than it did upon its weight, preferring the frailties of witness memory and perception over substantial proof of the occurrence that gave rise to the Excessive Force charges against Taylor; 2) The Commission erred to infer from its defective assessment of the evidence of Excessive Force that Taylor was Truthful and Honest in his administrative statement; 3) The Commission exceeded its authority by supplanting the Appointing Authority’s determination there was sufficient cause to terminate Taylor with its conclusion based upon its erroneous view of the evidence.

. The officer named nine witnesses.

. In particular, the hearing officer was keeping the hearing open for Elaine Hume and Joseph Guillot, who were unable to attend.