Judge Tiffany G. Chase
The New Orleans Police Department (hereinafter "NOPD") seeks review of the December 20, 2017 ruling issued by the Civil Service Commission (hereinafter "Commission"). The ruling granted Officer Isaiah Shannon's (hereinafter "Officer Shannon") appeal and reinstated his employment with the NOPD with all back pay and emoluments. After consideration of the record before this Court and the applicable law, we affirm the decision of the Commission to reinstate Officer Shannon with all back pay and emoluments of employment.
Facts and Procedural History
Officer Shannon was on patrol with Officer Shelton Abram (hereinafter "Officer Abram") on August 15, 2013. While patrolling, the officers noticed a black Chevrolet Impala in which the occupants were not wearing seatbelts. The officers turned their vehicle around and proceeded to follow the Chevrolet Impala. A chase ensued. During the chase, the Chevrolet Impala disregarded a stop sign and collided with a white Ford F-150 truck at the corner of Iberville Street and North Miro Street. Following the collision, Officer Abram proceeded to the driver's side of the vehicle and a physical altercation ensued with the driver. Officer Shannon attempted to pull the passenger out of the vehicle when he noticed a gun on the floorboard. Officer Shannon drew his gun and fired one shot. The duration of the incident was approximately seven seconds. Officer Shannon maintains he shot at the suspect from inside the Chevrolet Impala. Conversely, witnesses stated that he fired at the suspect while outside the vehicle. The passenger fled the scene without injury. Video surveillance from a nearby business was obtained but does not directly show the incident. Officer Shannon completed a written "Use of Force Statement," pursuant to the NOPD rules and regulations, recounting the events of the day. Following the incident, various departments of the NOPD conducted investigations into Officer Shannon's actions.
Lieutenant Kevin Burns (hereinafter "Lieutenant Burns") with the NOPD's Force Investigation Team (hereinafter "FIT") initiated a criminal investigation of the incident. Lieutenant Burns was assigned as the lead criminal investigator and tasked with determining whether criminal misconduct occurred on the part of Officer Shannon. FIT conducted the investigation which included taking Officer *1253 Shannon's statement. Lieutenant Burns issued a report which concluded that it was impossible for Officer Shannon to have shot his gun from inside the vehicle since there were no bullet strike marks[1] and no bullets hit the suspect. Additionally, Lieutenant Burns concluded that the video surveillance from the business supported his finding that Officer Shannon discharged his weapon from outside of the Chevrolet Impala. Specifically, he noted that the suspect was approximately 15 to 20 feet away from the vehicle when the crowd appears "startled" and "[ran] for cover." Lieutenant Burns' findings were submitted to the Orleans Parish District Attorney's Office but the District Attorney's Office declined to criminally prosecute Officer Shannon, concluding that the matter was better suited to be handled through the administrative process.
Officer Andre LeBlanc (hereinafter "Officer LeBlanc"), with the Public Integrity Bureau, conducted an administrative investigation. Officer LeBlanc's role was to assist the criminal investigation and analyze the case for policy violations and training issues. Officer LeBlanc also issued a report which concluded that Officer Shannon's conduct violated the NOPD's rules regarding unauthorized force and truthfulness.[2]
On November 4, 2014, Deputy Superintendent Robert Bardy (hereinafter "Superintendent Bardy"), of the Field Operations Bureau, conducted a disciplinary hearing to determine whether Officer Shannon violated departmental rules. After the disciplinary hearing and considering the evidence presented, Superintendent Bardy concluded that Officer Shannon's actions violated the NOPD's rules regarding unauthorized force and truthfulness. Superintendent Bardy recommended dismissal as a result of the violations.
On November 20, 2014, the NOPD sent Officer Shannon a letter advising him that he was dismissed from employment based on Superintendent Bardy's recommendation. The letter set forth several findings that the NOPD contends established that Officer Shannon's testimony was inconsistent and lacked truthfulness. The letter also noted that video surveillance depicts the suspect running from the vehicle and witnesses "ducking" and "moving quickly," indicating Officer Shannon discharged his weapon at the moment the suspect was fleeing. The letter also advised there were no strike marks or damage to the interior of the Chevrolet Impala and witnesses indicated that Officer Shannon discharged the weapon outside of the vehicle.
Officer Shannon appealed the termination of his employment to the Commission. The appeal was heard by a hearing officer over the course of six days. During the hearing, the hearing officer heard extensive testimony and viewed all evidence.
The hearing officer concluded that the NOPD failed to establish, by a preponderance of the evidence, that Officer Shannon's use of force was unauthorized and that the evidence was insufficient to prove he was untruthful about the incident. The hearing officer's report was submitted to the Commission on November 7, 2017. The Commission reviewed the transcript and exhibits from the hearing, as well as the hearing officer's report. The Commission issued its decision on December 20, 2017, finding the evidence submitted by the NOPD insufficient to meet its burden of *1254 proof. The Commission acknowledged there was evidence presented to support both Officer Shannon's and the NOPD's versions of events. Ultimately, the Commission granted Officer Shannon's appeal and ordered reinstatement with all back pay and emoluments of employment. This appeal followed.
Standard of Review
This Court has previously determined that decisions by the Commission involving questions of fact and law are reviewed under a manifest error/clearly erroneous standard of review.
In Banks v. New Orleans Police Dep't., 2001-0859, p. 3 (La.App. 4 Cir. 9/25/02), 829 So.2d 511, 513-14, we articulated the standard of review in civil service cases. First, the review by appellate courts of the factual findings in a civil service case is governed by the manifest error or clearly erroneous standard. Second, when the Commission's decision involves jurisdiction, procedure, and interpretation of laws or regulations, judicial review is not limited to the arbitrary, capricious, or abuse of discretion standard. Instead, on legal issues, appellate courts give no special weight to the findings of the trial court, but exercise their constitutional duty to review questions of law and render judgment on the record. A legal error occurs when a trial court applies the incorrect principles of law and such errors are prejudicial. Finally, a mixed question of fact and law should be accorded great deference by appellate courts under the manifest error standard of review. See Stern v. New Orleans City Planning Comm'n, 2003-0817, pp. 5-6 (La.App. 4 Cir. 9/17/03), 859 So.2d 696, 699-700.
Russell v. Mosquito Control Bd. , 2006-0346, pp. 7-8 (La.App. 4 Cir. 9/27/06), 941 So.2d 634, 639-640. As such, we will review this matter under a manifest error/clearly erroneous standard of review.
Discussion
The burden of proof regarding termination of an employee rests with the appointing authority. Johnson v. Dep't. of Police , 575 So.2d 440, 444 (La.App. 4 Cir. 1991). It must prove by a preponderance of the evidence that the employee's conduct impaired the efficiency of public service. Id. at 445. As the regulating body, it is the duty of the Commission to decide whether the appointing authority, in this instance the NOPD, has good or lawful cause for taking disciplinary action against an employee. Id. at 443 (citing Walters v. Dep't. of Police of New Orleans , 454 So.2d 106 (La. 1984) ).
The NOPD presents six assignments of error which, taken as a collective, argue the Commission ignored evidence presented and erred in granting Officer Shannon's appeal. The NOPD contends it had cause to terminate Officer Shannon for violation of its policies on unauthorized force and truthfulness. Specifically, the witnesses' statements, video surveillance, lack of strike marks and absence of a bullet hole support its contention that Officer Shannon's statements were not truthful and that he did not discharge his weapon from inside the vehicle. The NOPD maintains these actions justify Officer Shannon's termination.
During the course of the investigation, the NOPD obtained statements from several witnesses who were present at the scene of the incident. It also obtained video surveillance from a nearby business. The NOPD contends this evidence directly conflicts with Officer Shannon's testimony. According to the NOPD, the crowd's reaction in the video illustrates the precise moment shots were fired.
There is also a lack of bullet evidence inside the vehicle which the Commission and the NOPD found compelling. The NOPD maintains this evidence is critical *1255 because the lack of strike marks or a bullet hole is proof that Officer Shannon could not have fired his weapon from inside the vehicle. Thus, giving credence to its argument that Officer Shannon was untruthful. The Commission, while acknowledging the impact of the lack of bullet evidence, noted that it was not conclusive proof and considered it in conjunction with a shell casing from Officer Shannon's weapon which was located inside the vehicle.
In Taylor v. Dep't of Police , 2013-1367 (La.App. 4 Cir. 4/16/14), 140 So.3d 231, an undercover NOPD narcotics detective observed a drug transaction at a local high school. Once he identified himself as an officer, he attempted to arrest the suspect and an altercation ensued. A complaint was filed against the officer. Several witnesses were interviewed who alleged the officer kicked the suspect in the head during the altercation, which he and other officers denied. The officer was suspended for violating department rules on unauthorized force and ultimately terminated for violation of the department's truthfulness policy. The Commission granted the officer's appeal and found the NOPD failed to meet its burden of proof in terminating the officer. This Court upheld the Commission's decision finding "[t]he Commission clearly credited the officers' testimonies that they did not observe a kick over the conflicting testimonies...." Id. , 2013-1367,p. 6, 140 So.3d at 234. Additionally, "[t]he Commission clearly believed [the Officer's] version of the events...." Id. , 2013-1367,p. 5, 140 So.3d at 234.
In this case, as in Taylor , there are multiple versions of the events surrounding the incident. The Commission credited Officer Shannon's version of the events over the witnesses' statements. The Commission did not find the witnesses' statements competent and noted the statements contained biases and inconsistencies, which were not explained at the hearing.[3] Additionally, the Commission did not find the video surveillance compelling. It noted the intersection where the incident occurred is viewed in the periphery of the video and lacks audio. Due to the lack of audio, the Commission reasoned, the NOPD could not prove that a gunshot caused the crowd's reaction.
In addition to the foregoing, the NOPD argues the lack of strike marks or an interior bullet hole is evidence Officer Shannon did not fire his weapon from inside the vehicle. Officer Shannon maintains he fired his weapon from inside the vehicle. Additionally, a casing from his weapon was located inside the vehicle. "[W]hen there are two permissible views of evidence, the fact finder's choice cannot be manifestly erroneous." Lapene v. Dep't. of Police , 2011-0902, p. 4 (La.App. 4 Cir. 1/25/12), 81 So.3d 998, 1000 (citation omitted). The Commission was presented with two views of the evidence regarding when Officer Shannon discharged his weapon. Although there was no bullet hole found in the vehicle, a casing from Officer Shannon's weapon was located inside the vehicle. Officer Theodore Koelling (hereinafter "Officer Koelling"), with the NOPD's Advanced Crime Lab, was assigned to process the vehicle in order to locate possible ballistic evidence. He performed a gunshot residue kit test on portions of the interior and exterior of the vehicle. He testified that although he did not locate strike marks in the vehicle, strike marks are not always present when a weapon is discharged inside of a vehicle. While processing the vehicle, Officer Koelling located the .40 caliber shell casing from Officer Shannon's weapon inside the vehicle. Taking into consideration Officer Koelling's testimony, *1256 the Commission balanced the lack of strike marks in the vehicle with the fact that a shell casing was found inside. Sufficient information was provided to the Commission for it to weigh which view of the evidence it deemed plausible. Although two views exist as to when Officer Shannon discharged his weapon, the Commission, as the fact finder, chose to accept Officer Shannon's version of the events.
The Commission reasoned that in order to prove Officer Shannon was untruthful and that he knowingly provided false information, the NOPD must first establish he discharged his weapon at a fleeing suspect. As previously noted, the Commission weighed the evidence and determined the NOPD failed to establish Officer Shannon discharged his weapon at a fleeing suspect. This Court has previously held that " 'deference will be given to the factual conclusions of the Commission.' " Pope v. New Orleans Police Dep't , 2004-1888, p. 6 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 4 (quoting Smith v. New Orleans Police Dep't , 1999-0024, p. 5 (La.App. 4 Cir. 9/22/99), 743 So.2d 834, 837 ). The NOPD failed to establish Officer Shannon's statements were untruthful. The Commission did not deem the evidence submitted by the NOPD sufficient to meet its burden of proof. Thus, we find the factual conclusions made by the Commission are not contrary to the evidence and as such, will not be disturbed by this Court.
Conclusion
The role of this Court is to review the Commission's actions and determine if those actions were arbitrary or capricious. "A decision by the Civil Service Commission is 'arbitrary or capricious' if there is no rational basis for the action taken by the Civil Service Commission." Waguespack v. Dep't. of Police , 2012-1691, p. 3 (La.App. 4 Cir. 6/26/13), 119 So.3d 976, 978 (citation omitted). Based on the record before this Court, a rational basis exists for the Commission's actions. The Commission identified biases and inconsistencies in the witnesses' statements and ultimately determined the statements were not competent. It also found the video and lack of audio inconclusive. Although the interior of the vehicle did not have strike marks, the Commission took into account the discovery of the shell casing from Officer Shannon's weapon being located inside the vehicle. The Commission believed Officer Shannon's version of events after weighing all the evidence presented. It determined the NOPD did not present sufficient evidence to terminate Officer Shannon for use of unauthorized force and truthfulness.
For the foregoing reasons, we find the record reasonably supports the Commission's finding that the NOPD failed to establish, by a preponderance of the evidence, Officer Shannon violated the NOPD's rules regarding use of unauthorized force and truthfulness. Therefore, the Commission was not manifestly erroneous in finding the evidence presented by the NOPD was insufficient to terminate Officer Shannon and reinstate him with all back pay and emoluments of employment.
AFFIRMED

A strike mark is a hole or damage to an item.

Specifically, Officer LeBlanc's report found Officer Shannon violated NOPD Rule 2, regarding moral conduct on unauthorized force and truthfulness, when he discharged his departmental issued firearm at a fleeing unarmed suspect and indicated he shot at the suspect from inside the Chevrolet Impala.

The record does not reflect that the witnesses who provided statements during the investigation were subpoenaed to testify at the hearing.